## Swails et ux., Appellants, v. White et al.

*Will— Execution of by testator not directly concerned in its preparation.*

Where a will has been prepared for a testator by the direction of one who and his wife are the sole beneficiaries under it,without the scrivener and testator having been brought together, there ought to be clear evidence that he had an intelligent understanding of its contents and that he knew what disposition he was making of his property : Yardley v. Cuthbertson, 108 Pa. 395.

*Testamentary capacity—Evidence.*

On the question of testamentary capacity, evidence of the condition of the mind of testator *near* the date of the will is admissible.

The opinion of testator's neighbors, who had known him for many years and who had been in the habit of visiting him, is also admissible.

Argued April 26, 1892.   Appeal, No. 231, Jan. T., 1892, by plaintiffs, John Swails and Agnes Swails, from judgment of C. P. Erie Co., Sept. T., 1891, No. 254, on verdict for defendants, Ida White and Carrie Wilder.   Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Issue devisavit vel non as to an alleged will of Moses Reynolds.

On the trial before GUNNISON, P. J., the evidence was to the following effect: On January 12, 1891, and for some months previous, Moses Reynolds was living with John Swails and Agnes his wife.   He was over 80 years of age and quite sick. On that day, John Swails went to Judge BENSON, at the town of Waterford, a few miles from his house, and asked Judge BENSON to come to his house to write Reynold's will.   Upon Judge BENSON's saying that he could not come, John Swails gave him the instructions for the will, which the judge drew and handed to Swails.   The name of the executor was left blank. Swails secured two of his neighbors to come to the house and witness the will, which was executed by Reynolds with his mark.   In all that he did, as stated, Swails testified that he was acting under Reynolds' instructions.   No one but the witnesses and testator were in the room at the time the will was executed.   The witnesses testified that the will was read over to the testator and that he said it was all right.   The testator first said that he was not ready to sign the will, and then, in a mo-

ment or two, that he was ready.   John Swails was called into
the room by one of the witnesses, at the request of the testator,
just before the will was signed.   Swails was the only witness
as to his conversation with the testator at this time, which he
said related to the question whether or not the naming of a
certain person as executor would be satisfactory to him.   The
name of the executor was filled in by one of the witnesses.   Ida
White, one of the contestants, and the mother of the contest-
ants, Mrs. Sarah White, were in the house at the time the will
was executed, but were not in the room, John Swails telling
them that the testator did not want them there.   The alleged
will devised all his real estate to John Swails and gave to Agnes
Swails all his personal property.

Reynolds died January 21, 1892.   The contestants were sis-
ters, nieces of the testator, to whom, by a previous will, he had
given all his property.

Other facts appear by the opinion of the Supreme Court.

*J. Ross Thompson*, with him *O. L. Flinn*, for appellants.

*E. L. Whittelsey*, with him *J. W. Sproul*, for appellees.

PER CURIAM, May 23, 1892:

We are of opinion that substantial justice has been reached
in this case, and in the proper way.   It is very evident that the
alleged will was not the will of Moses Reynolds, the testator.
It was prepared by the scrivener by the direction of John
Swails, one of the two beneficiaries named in the will.   The
scrivener and the testator were not brought together.   The tes-
tator therefore cannot be said to have had anything to do with
its preparation, or to have given any direction respecting it.   It
is true, it was read to him before he affixed his mark, and a few
days prior to his death.   Under such circumstances, there ought
to be clear evidence that he had an intelligent understanding
of its contents, and that he knew what disposition he was mak-
ing of his property: Yardley v. Cuthbertson, 108 Pa. 395.   The
case lacks this essential feature, and the jury have found that
at that time he had not testamentary capacity.   It is true, some
of the evidence bearing upon this question was objected to on
the part of the plaintiff, and its admission assigned as error.
We cannot say it was improper to receive it.   The will was
executed on January 12, 1891.   The testator died on the 21st

day of the same month.   The question at issue was the condition of the testator's mind on the day the will was written, and under all the authorities evidence of its condition at a time near that date would be some evidence as to its condition at that time.

It was further contended that some of the witnesses had been permitted to testify as to the condition of the testator's mind, without having first stated sufficient facts to base their opinion upon.   It must not be overlooked, however, that the witnesses referred to were his neighbors, who had known him for many years, and who had been in the habit of visiting him.   They were acquainted with his former condition, and could mark the change at the time of their interview with him.   The testator was suffering from a cancer in the neck, and the witnesses describe him as lying in a kind of stupor; not able to carry on a conversation, and, in their opinion, not competent to make a will, or to do any kind of business.   We are of opinion the evidence was properly received.

Judgment affirmed.