# Wood's Estate.

*Wills—Revocation—Cancellation—Will in testator's possession—Declaration of testator—Evidence—Harmless error.*

1. Where in a contested will case it appeared that the will when found after testator's death showed cross lines in ink through a bequest therein and testator's widow, who was a competent witness,

testified that in her presence testator had scratched out paragraphs in the will, mentioned the legatee named in a cancelled paragraph and stating that he had changed his intention to "take care of such legatee"; that the will was kept where testator and the witness were the only persons who had or could have access to it, but that the witness had never seen the face of the will until after her husband's death, the fact that the envelope containing the will which the wife stated was sealed, was found at testator's death to have been opened was insufficient to raise the presumption that testator had not cancelled the bequest, and the fact that a codicil dated more than two months after the period of the alleged cancellation made mention of the cancellation of other bequests, without saying anything about the cancellation of the gift in controversy and that the lines cancelling the bequests referred to in the codicil were of a different character from those cancelling the gift in controversy, were not conclusive proof that testator had not made such cancellations, and a finding that testator had drawn the lines through the bequest with intention to cancel it, was justified by the evidence.

2. In such case evidence consisting of a letter purporting to have been written by the legatee of the cancelled bequest in controversy, wherein the statement that testator had said he was going to cut off the writer was made, was inadmissible, where it was shown to have been written by a person other than such legatee whose authority did not appear by sufficient proof, but was harmless error, there being other evidence sufficient to sustain the findings of fact of the court.

Argued Oct. 14, 1914. Appeal, No. 139, Oct. T., 1914, by Lauretta R. Mayes, from decree of O. C. Allegheny Co., Nov. T., 1912, No. 181, dismissing petition to charge legacy on land in Estate of John A. Wood, Deceased. Before FELL, C. J., BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition to require payment of a legacy charged on land. Before TRIMBLE, J.

The facts appear by the opinion of the Supreme Court.

The lower court dismissed the petition. Petitioner appealed.

Errors assigned, among others, were various rulings on evidence and in dismissing the petition.

*Henry A. Jones,* for appellant, cited: Naglee's Est., 52 Pa. 154; Brown's Est. (No. 1), 210 Pa. 493; Wynn v. Hereningham, 28 Eng. Ch. Rep. 630; Jones v. Murphy, 8 W. & S. 275; Stewart's Est., 149 Pa. 111; Rudy v. Ulrich, 69 Pa. 177; Hilldreth v. Schillenger, 10 N. J. Eq. 196; Breneman's Est., 65 Pa. 298; Throckmorton v. Holt, 180 U. S. 552; State v. Byrd, 93 N. C. 624.

*O. P. Robertson,* for appellee, cited: Tomlinson's Est., 133 Pa. 245; Linnard's Est., 93 Pa. 313; Stewart's Est., 149 Pa. 111; Throckmorton v. Holt, 180 U. S. 552.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1915:

John A. Wood died April 16, 1910, leaving a last will dated July 5, 1900, together with a codicil dated April 19, 1905. The will and codicil were duly probated in Allegheny County, May 3, 1910. The testator made various bequests, among others, in paragraph 9, one of $10,000 to a trust company, to invest the principal and pay the income to Lauretta R. Mayes during life or until her marriage. When the will was found, after the testator's death, cross lines in ink were drawn through this bequest, and the decedent's executor declined to recognize it as a subsisting legacy; whereupon, Mrs. Mayes petitioned the Orphans' Court praying that it order the $10,000 set aside for her benefit. The case was heard on petition, answer, and replication; after considering the testimony, the court below entered a decree refusing the prayer of the petition. Subsequently, exceptions to the decree were dismissed, and it was made final; the petitioner has appealed.

The proceedings in this case seem to have been instituted upon the theory that the will was tampered with and changed by some third party, without the testator's knowledge; and the procedure rests upon the authority of Widdowson's Est., 189 Pa. 338, 340. The appellant endeavored to bring all parties in interest upon the

record; but she expressly disavowed an intention of making a specific charge of fraud against any particular individual.    The evidence was submitted to the court below, there was no prayer for an issue, and the auditing judge found that the testator had drawn the lines through the bequest to the appellant, with an intention to cancel it.    There can be no doubt of the sufficiency of this method of cancellation [Evans's App., 58 Pa. 238], if the lines were actually drawn by the testator; but the question is, was the evidence sufficient, in fact, to justify the finding of the court below, or, in law, to sustain it?

Mrs. Wood was examined by both sides; she had made a bona fide sale and conveyance of all her interest in the decedent's estate some time before appearing as a witness, and, since she always could have taken against her husband's will more than she would have received under it, with the bequest to the appellant either in or out of the document, and since her testimony bears marks of honesty upon its face, the court below cannot properly be criticised for placing reliance upon it.    Mrs. Wood stated that in February, 1905, at their home, her husband read a paper to her, which in substance agreed with the will probated after his death; that "while he was reading he took his fountain pen from his pocket and scratched out several paragraphs in the will and made comments on each paragraph, just before scratching the same."    The witness further said, "He also stated that at one time he expected to take care of Lauretta R. Mayes after his death, but that he had not expected to take care of her during his lifetime (which it appears he had done), and to the best of my recollection my husband then said 'I will change that,'" presumably meaning the provision for the appellant, for Mrs. Wood added, "When my husband got through reading a paragraph, he then made some comment and scratched,......, and did the same thing after he got through reading the paragraph in reference to Lauretta R. Mayes, that is, he made his comment concerning it and then I heard

scratching," further, "My husband stated to me that he had expected to take care of Mrs. Mayes after his death, but that he had not expected to take care of her during his lifetime and that he would now change it."

Subsequently the will was put in a sealed envelope and placed in Mrs. Wood's trunk, where it remained for a year or more; during that time both she and her husband carried keys for the trunk and had access thereto. Afterwards the envelope was placed by Mrs. Wood in a "camphor chest," to which she alone carried a key; it was found there the day after the death of the testator by the widow and a son of the decedent, in its present mutilated condition. If this were all the evidence in the case, since Mrs. Wood testified that she had never actually seen the face of the will till it was found after the death of her husband, and since the whole purport of her testimony is to the effect that she did not draw the lines through the bequest to the appellant, and since, aside from his wife, up to the time of his death, the testator was the only one, so far as the testimony shows, who knew where the document was kept, or had access thereto, and since he, undoubtedly, had such access while the will was in his wife's trunk, and, possibly, thereafter when it was in the camphor chest, the inference that he took the paper from its place of deposit and marked the lines through it could reasonably be drawn; or, in view of the declarations made by him concerning his intention to annul the bequest to the appellant, and his scratching on the paper with a fountain pen at the time, the inference that he had then and there marked the will animo cancellandi could properly be deduced. The appellant contends, however, that, since the envelope containing the will, when found after the testator's death, was open at one end, whereas Mrs. Wood testified that it had always been sealed from the time she placed it in her trunk until it was found after her husband's death, and since the codicil of April, 1905 (dated more than two months after the time in Febru-

ary, 1905, when the testator is alleged to have cancelled
the bequest in question), makes mention of the cancel-
lation of several other bequests without saying anything
about the cancellation of the gift to the appellant, and
since the lines drawn through these other bequests are
of a different character from those found upon the one
to the appellant, and also of a different character from
those drawn through another part of the will (defaced
in the same way as the provision for the appellant),
concerning which the codicil likewise makes no mention,
and since the will was not always in the sole and ex-
clusive possession of the testator up to the time of his
death, the evidence was insufficient in fact and in law
to justify or sustain the finding of the court below to the
effect that the bequest to the appellant had been can-
celled by the act of the testator. The case is a close one;
but after reading all the testimony and considering the
authorities cited, we are not convinced of error in the
facts found or in the conclusion reached by the learned
court below.

Under the circumstances, it cannot be said that the
will was ever actually out of the possession of the tes-
tator, in the sense of being beyond his control. While
the paper was in his wife's trunk, the testator had free
access thereto; and although Mrs. Wood said that she
was the only one who had the key to the camphor chest,
yet there is nothing to show that the testator could not
have secured access to the will had he desired, and pre-
sumably he could have done so. Mrs. Wood apparently
was mistaken in her assumption that the envelope had al-
ways remained sealed from the time it was placed in her
trunk until found after the decedent's death, and the in-
ference that her husband broke the seal might well be
drawn. The declarations made by the testator, testified
to by his widow, were relevant as part of the res gestæ of
the act of cancellation, if, in fact, he drew the lines
through the will in February, 1905, and upon that theory
they properly were accepted in evidence. Of course, the

fact that no mention was made of the alleged cancellation in the subsequent codicil was some evidence that it had not taken place in February, 1905, but it was not conclusive proof. On the whole body of evidence, the strong probability is that the cancellation was made by the testator himself; and a mere suspicion that some one else might have drawn the lines across the appellant's bequest is not enough to overcome this probability [Stewart's Est., 149 Pa. 111, 114].

The court erred in considering a letter offered by the appellee, purporting to have been signed by Lauretta R. Mayes, which contained a statement to the effect that the testator had told the appellant that he would not leave her anything. While a witness testified to the "impression" that Mrs. Mayes had authorized the letter, yet the evidence upon the subject shows that the epistle, including the signature, was in the handwriting of another person, and there was no sufficient proof that it was either authorized or adopted by the appellant. The fifth assignment, which relates to the consideration given to this letter, is good; but, since there was no jury to give undue weight to the evidence in question, and since there is other evidence upon the record sufficient to sustain the determination reached by the court below, the matter here complained of does not constitute reversible error. Several letters from the testator to the appellant were put in evidence, but these were of so little probative weight that they do not merit discussion. Finally, some of the authorities cited are not relevant and the others are distinguishable on their facts; none of them rules the present case.

The other assignments of error are all overruled, and the decree of the court below is affirmed; the costs to be paid out of the decedent's estate.