# White's Estate.

*Wills—Contests—Alleged undue influence—Petition for issue d. v. n. — Refusal — Executors — Insertion of name after execution— Proof of execution of will—Sufficiency—Presumption—Burden of proof.*

1. Although the proponent of a will is a near relative, and the chief beneficiary thereunder, the fact that he actively participated in the preparation and execution of the will does not, of itself, place upon him the burden of showing lack of undue influence, as it would in the case of a stranger.

2. It is not essential to the validity of a will to prove more by the witnesses, who were present at its execution, than the identity of the instrument, that they saw the testator subscribe or make his mark, and that at the time of doing so he was of sound mind; since a will so executed is presumed valid although it is not read at the time.

3. A will should not be set aside merely because of suspicious circumstances or some unusual features in the evidence for the proponent, especially where such evidence has been given credit by the court, who saw and heard the witnesses.

4. The naming of an executor in a will after the execution thereof is ineffective, but does not destroy the instrument.

5. A petition for an issue d. v. n. was properly refused where the testamentary capacity of the testator was admitted and where, although undue influence was alleged and it appeared that the proponent, who was the principal beneficiary, had caused the will to be prepared in testator's absence and had assisted him in its execution, there was evidence that at the time of its execution, which was four years prior to his death, testator was of sound mind, that the testator several days after the execution of the will read it aloud in the presence of a number of people, expressed full satisfaction with it, and that it remained in his possession until the time of his death, during which period he made no effort to change it.

Argued Feb. 12, 1917; reargued July 16, 1918. Appeal, No. 55, Jan. T., 1916, by Thomas Huben, from decree of O. C. Schuylkill Co., Docket 8, p. 160, refusing issue devisavit vel non in case of Estate of Fargus White. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ., on reargument. Affirmed.

Petition for issue devisavit vel non.  Before WILHELM, P. J.

The opinion of the Supreme Court states the facts.

The court refused. the petition.  Thomas Huben appealed.

*Error assigned* was the decree of the court.

*R. A. Freiler* with him *J. F. Mahoney,* for appellant.

*John F. Whalen,* with him *Jas. M. Breslin* and *M. M. Burke,* for appellees.

OPINION BY MR. JUSTICE WALLING, October 7, 1918:

This is an appeal by contestant from a decree of the Orphans' Court refusing to award an issue in a will contest.  Fargus White, a resident of Ashland, Schuylkill County, died March 16, 1914, leaving an estate of about eighteen thousand dollars, mostly in money.  He lived to the age of eighty years, but never married, and left nephews and nieces as his next of kin.  He owned a double house, one part of which was his home.  His sister, Mrs. Michael Huben, who died in 1912, was his housekeeper for over twenty years.  Her son, Michael P. Huben, the proponent, lived with them until his marriage, after which he resided in the other part of the house.  Mr. White retired from active work about 1902; previously he had been employed as a fire boss in the mines.  He was reserved, eccentric and penurious, but in good health, considering his age, often appeared on the streets and bought the supplies for his household.  He was not engaged in any business but seemed alert in his small financial transactions.  He had some of the infirmities of age, yet his testamentary capacity must be and is conceded.  After his death his nephew, Michael P. Huben, presented to the register of wills of said county a writing purporting to be the last will of Mr. White, and, formal proofs being made, it was duly probated; from which an

appeal was taken to the Orphans' Court, where the petition for an issue was refused; hence this appeal.

The will, dated July 2, 1910, gives all testator's estate to his sister for life and then to her son, Michael P. Huben. It was written by Mr. Charles A. Horn, a telegraph operator, at his office in Shenandoah, several miles from Ashland. Mr. Horn and Mr. Huben were friends and in the employ of the same railroad company, and the former wrote the will at the request of and as directed by the latter, and gave it to him when written. Mr. Horn did not see Mr. White and had no direct communication from him with reference to the will. Thomas J. Flanagan and John C. Flanagan, young men employed in a store in Ashland, signed the will as witnesses. Mr. Huben came to their store and requested them to go to his home for that purpose. They found Mr. White near the house, and Thomas testified as follows: "Q. Tell us what occurred when you got up there? A. We went up, and the old gentleman was on the outside, and Michael told his uncle 'here is the Flanagan boys to sign'—I cannot say, 'sign the will or papers,' but he brought the old gentleman in and we signed the will after the old gent signed." John testified that what Mr. Huben said was "Here are the Flanagan boys now." They both say the paper was found spread out on the table in Mr. Huben's kitchen and so far as they have any recollection the will was not read nor its contents explained in their presence.

The testimony of Mr. Huben and his wife, and also that of her brother and of her mother, is to the effect that about three days after the will was signed the testator brought it to Mr. Huben's home and asked him to take it to Flanagan's store and have one of the witnesses insert Mr. Huben's name as executor, which was immediately done and the will brought back to the testator, who read it aloud, expressed full satisfaction therewith and took it home with him after it had been examined and read by the other parties present. According to the

evidence of the Flanagan boys, they sometime later, at Mr. Huben's request, went again to his home to witness another will for Mr. White, but he was at the rear end of his lot and, as Huben informed them, refused to go on with the matter fearing it might interfere with the sale of his property.

Mr. White had a distrust of banks and kept his money, amounting to about $16,000, in his own home; but about the time the will was made he missed some money which he thought had been stolen. Shortly thereafter the $16,000 was taken to a bank by the nephew, Michael P. Huben, and deposited in the name of himself and wife; but it was soon withdrawn and returned to Mr. White at his request and kept by him practically intact until his death. Proponent testified, inter alia, that Mr. White directed him to get Horn to write the will and told him how he wished it written; that the testator had the will in his possession before it was executed and thereafter until his death; that proponent went for the witnesses to the will as directed by testator; that the will was read by Mr. White and also by the subscribing witnesses before its execution; that proponent was acting under the instructions of testator in having his own name inserted as executor; that he deposited the money in the name of himself and wife also under the instructions of Mr. White, who later withdrew it for fear of the bank's failure; and that proponent never to his recollection caused the Flanagans to come to his home to witness another proposed will for testator.

The question in the court below was and here is a preliminary one, as to whether there is a substantial dispute of a material question of fact; if so, an issue is a matter of right. But, "If the testimony is such that after a fair and impartial trial resulting in a verdict against the proponents of the alleged will, the trial judge, after a careful review of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence, it cannot be said that a dis-

pute, within the meaning of the act, has arisen and the issue should be refused." The rule as quoted above is too familiar to require the citation of authorities. This case differs from a large majority of will contests in that here testator, although a unique character, admittedly had testamentary capacity and was in good health. He also had sufficient education to do ordinary business. The will was brief, plainly written and easily understood. Under such circumstances, testator's act of signing the will in the presence of those called as witnesses is entitled to great weight. Had he at the time been suffering under some serious mental or physical ailment the case would present a different aspect. This was four years prior to testator's death, and it does not appear that he ever expressed any desire to have the will changed or to make any different disposition of his property than therein contained, while the evidence is that the will remained in his possession from its execution until his death. This is an important circumstance, so held in many cases from Irish v. Smith, 8 S. & R. 573, to South Side Trust Company v. McGrew, 219 Pa. 606. The language of Judge ASHMAN, approved by this court in Coleman's Est., 185 Pa. 437, is applicable here, "He [the testator] lived for eight years after making his will, without an effort to revoke it; and every day of that period was an affirmance of its provisions." It was a natural will—the sister had kept his home for over twenty years and her son had long lived as a member of his family, and thereafter in a part of his house; while he but occasionally saw the other relatives.

A careful examination of the entire record fails to disclose any evidence of undue influence sufficient to come within the rule stated by this court in Phillip's Est., 244 Pa. 35. See also South Side Trust Company v. McGrew, supra. There is no proof here that proponent influenced or tried to influence his uncle in the making of the will in question, and not sufficient evidence to support a finding that a confidential relation existed be-

tween them.  Proponent being a near relative, the fact that he actively participated in the preparation and execution of the will does not of itself place upon him the burden of proof, as it would in case of a stranger: Blume v. Hartman, 115 Pa. 32; Hook's Est., 207 Pa. 203.  In Swails et ux. v. White, 149 Pa. 261, so far as appears, proponents were not related to testator, who was on his death bed and as the jury found did not possess testamentary capacity.  In the present case it was not unnatural for Mr. White to have the nephew, who had grown to manhood in his home and still lived by his side, consult the scrivener as to the preparation of the will or call in those chosen as witnesses thereto.

It is not essential to the validity of a will to prove more by the witnesses, who were present at its execution, than the identity of the instrument, that they saw the testator subscribe or make his mark, and at the time of the doing thereof he was of sound disposing mind, memory and understanding: Combs' and Hankinson's App., 105 Pa. 155.  That was done in this case, and a will so executed is presumed valid although not read at the time.  Even conceding that such circumstance might place upon proponent the burden of showing that testator knew the contents of the will, such burden was discharged; for, considering all the evidence on both sides, a finding that testator was not familiar with the contents of the will would necessarily be set aside as contrary to the manifest weight of the evidence.  See Caughey v. Bridenbaugh, 208 Pa. 414, 433.  But a testator is presumed to know the contents of a will executed by him in the presence of witnesses, although it is not read at the time: Linton's App., 104 Pa. 228; Dickinson v. Dickinson, 61 Pa. 401; Vernon v. Kirk, 30 Pa. 218.

There are some suspicious circumstances, including proponent having his friend Horn draw the will in testator's absence, the deposit of the money in bank in the name of Huben and wife, and the alleged effort to secure the making of another will.  There are also unusual fea-

tures in some of the evidence on behalf of proponent. But a will should not be set aside merely because of suspicious circumstances or of some unusual features in the evidence for proponent, especially where such evidence has been credited by the court below, who saw and heard the witnesses. That testator withdrew his money from the bank when he so desired, and also refused to make another will at proponent's request, if true, indicate that he was not under the latter's control.

The court below was right in holding that the insertion of Mr. Huben's name as executor, after the execution of the will, was ineffective, but did not destroy the instrument: Saunders v. Samarreg, 205 Pa. 632.

The assignments of error are overruled and the decree is affirmed at the cost of appellant.