## McClure's Estate. No. 1.

The facts appear from the opinion of

CAMPBELL, Register of Wills.—The testatrix left a formally drafted testamentary writing dated June 30, 1924, signed at the end, and also bearing the signatures of two subscribing witnesses, in which appears an item as follows: "I give and bequeath to the League of Women Voters the six, One thousand dollar coupon bonds of the Baltimore and Ohio Railroad Company which I now own, together with any interest accrued thereon at the time of my death," followed by a disposition of the residue to a niece, whose name is obscured by cancellation. Another—informal—testamentary writing dated September 1, 1924, is presented, in which there is provision for funeral expenses and perpetual care of a cemetery lot, with a residuary disposition: "Everything else belonging to me to be sold & the money obtained added to any money I leave & the amount which should exceed $11,000.00 given to the protestant Home for children under ten years of age such fund to be in memory of my son Dr Sorden McClure." This instrument bears the signature of the testatrix, but there is no subscription by witnesses. The physical appearance of the papers being important, photostat copies are attached hereto.

Two nieces of the testatrix urge probate alone of the instrument dated September 1, 1924, contending that it evidences an intent of the testatrix to dispose of her entire estate, and, therefore, even though it contains no specific clause of revocation, it revokes the instrument of June 30, 1924; an intestacy resulting in favor of the nieces because of the lapse of the residuary legacy to the charity in the absence of subscribing witnesses required by the statute.

The "League of Woman Voters," specific legatee under the writing dated June 30, 1924, petitions for probate of the two instruments together as constituting the will of the testatrix, relying principally on the doctrine of dependent relative revocation, or revocation dependent upon valid substitution, to save the charitable gift in the instrument of June 30, 1924.

The case enters a field in which there is a conflict of authorities—a field in which the severity of apparently intractable statutory law is moderated in the cases by reasoning that frets somewhat at the curb of logic, yet satisfies the judicial sense of personal equity.

The first paper contains a specific clause revoking former wills; the second paper does not contain such clause. A clause of revocation in a will recently has assumed distinctive significance under the authority of Ford's

Estate, 301 Pa. 183 (1930), with its adoption and adaptation of abstract textbook conclusions and diverse case precedents. It is there primarily held that a clause of revocation in a will presents an isolated, conclusive concept of the testator, independent of the surrounding testamentary provisions, and immediately operative on execution, though the instrument containing the clause must be "produced, signed by the testator," after his death, as evidence, though itself revoked: Shetter's Estate, 303 Pa. 193.

Quoting from Ford's Estate, *supra*, page 189:

"The court below says they [clauses of revocation in earlier wills] are to be disregarded as writings to revoke the earlier will because as wills they could not be effective. . . . Dispositively this is so, but as 'other writings' which could be and were proved in the manner wills are, they were facts, which established that by solemn written declaration the decedent had wiped out the will of 1924,"

which would appear to be final, but the court resumes:

"As against this we are asked to presume that when he tore and directed the further tearing of the pages of the 1927 will and thus revoked it, he intended to revive the one of 1924 when every circumstance in the record indicates that he did not.

"Illuminating upon what his intent and purpose were is the story," etc.

If the will of 1924 was "wiped out" by the execution of the revocatory clause in subsequent wills, then the court's admission of testimony concerning testator's "intent and purpose" would, if vitalizing, have seemed to be equivalent to a reëxecution by parol of the will of 1924; and an intestacy in the case was not achieved alone by the clause of revocation, nor by the testator's tearing the will, but by those facts supplemented by his declarations in respect to his son.

The doctrine of dependent relative revocation, or revocation dependent upon valid substitution (substitution of an intestacy in the Ford case and the alternative might have been either the will of 1924 or that of 1927), could scarcely be more explicitly recognized.

From the tentative language of the Supreme Court in the Ford case, we may fairly presume that, though the clause of revocation establishes the existence of a decisive revocatory intent of a testator, yet oral testimony will be admitted to annul or to fortify the intent thus established. Conversely, absence of such clause should create at least some presumption of indecision—a provisional shading in the instrument, upon which "illuminating" evidence may be adduced and considered to assist the court in determining the testator's intent in executing the later inconsistent paper.

Without a clause of revocation, the second instrument would appear to be as much a part of a generally contemplated testamentary scheme as separate items in a single instrument or items in a codicil giving the same specific legacies or bequests to different legatees, or cumulative legacy problems. The probate court would not consider such fact and enter a decree refusing probate of any one or more of the several items.

It is true that we have Gensimore's Estate, 246 Pa. 216 (1914), in which appears the rather inexplicable conclusion that a written instrument disposing of personalty, and of realty which had been sold before the testator's death, should be refused probate, and only an instrument disposing of personalty admitted—indicating that the probate court should scrutinize the terms of an instrument, determine the nature of the estate (perhaps involving questions of conversion, powers, etc.), and if there is no property upon which the instrument can operate, probate should be refused. Distinguished

from this case, however, is Carson's Estate, 241 Pa. 117 (1913), in which it is held:

"The probate of a will without regard to its provisions is one thing; distribution of the estate of the testator in accordance with its terms is another. The former is for the register; the latter is none of his concern. Distribution is for the court alone, and, on distribution, and not before, is the validity of the provisions of a will to be passed upon."

It is possible indeed, therefore, that in the present case, the register's decree admitting both papers together as the will would still leave to the court of distribution the question of revocation of any of the legacies. For there is confusion in the practice. Relative to the erasure, for example, of the name of the residuary legatee in the paper of June 30th, the authorities apparently would presume, if the paper came from the custody of the testatrix with no suspicious circumstances, that she personally canceled the legacy, resulting in an intestacy of the residue: Baptist Church v. Robbarts, 2 Pa. 110; Evans's Appeal, 58 Pa. 238; Wood's Estate, 247 Pa. 377. Logically, the facts should be submitted to the probate official to determine whether the cancellation was made by the testatrix, and the will then admitted with or without the dispositive text. But it seems to be the practice in Pennsylvania for the register to admit to probate wills containing such alterations; and then, on the audit of the executor's account, the court of distribution will hear and determine questions of this nature, deciding whether there has been a revocation, or whether the original textual disposition shall be reëstablished: Wood's Estate, *supra;* Widdowson's Estate, 189 Pa. 338, 340; although in Morrow's Estate, 204 Pa. 479, the question of alteration in a will was considered on appeal from the register.

In the Ford case, the ultimate determining factor leading to an intestacy that abrogated the charitable legacy was the testator's intent, evidenced by oral expressions concerning his son. In the case before the register, there is an instrument that was carefully preserved by the testatrix, in which a bequest is made to charity, and a specific cancellation *alone* of the residuary gift to a niece; and a subsequent instrument in which the estate is given for a charitable object. Considering the entire evidence, we can infer no intent of testatrix to substitute an intestacy for a charitable disposition. There can be no doubt that this testatrix preferred to benefit charity as against her next of kin generally, and the court should be permitted to determine whether this testatrix intended a revocation of the gifts to charity in the earlier instrument unless there should be a valid substitution by the charitable disposition contained in the later writing.

In Melville's Estate, 245 Pa. 318, 324, it is said:

" 'The rule in regard to revocations arising from inconsistent dispositions seems to be that where the second devise fails by reason of a defective execution of the second will, it is no revocation of the first: Jarman on Wills, 154; but where it fails from want of capacity in the devisee to take the prior devise is revoked: French's Case, 1 Roll. Abr. 614; Roper v. Radcliffe, 10 Mod. 230; 8 Vin. Abr. 141, Tit. Devise R. Mr. Justice Rogers, in the case of Jones v. Murphy, stated the rule correctly when he held, that if the second will was properly executed according to the statute, though it should be prevented from operating by the incapacity of the devisee, or any other matter dehors the will, the former will is, nevertheless revoked by it; 8 W. & S. 300.' "

"Our cases are in entire harmony with the general rule on this subject, which is thus stated in 1 Jarman on Wills, 344:

" 'If, on the other hand, the new devise be ineffectual, on account of the attestation being insufficient for a devising, though sufficient for a revoking will the revoking clause becomes inoperative on the principle before noticed that the revocation is conditional and dependent on the efficacy of the admitted new disposition, and that failing, the revocation also fails; the purpose to revoke being considered to be, not a distinct independent intention, but subservient to the purpose of making the new disposition of the property; the testator meaning to do the one so far only as he succeeds in effecting the same. But it seems, that, if the second devise fails, not from the infirmity of the instrument, but from the incapacity of the devisee, the prior devise is revoked.'

"Page in his treatise on Wills, Section 271, thus states the rule:

" 'The later revoking instrument is much oftener a will or codicil. In the discussion of this branch of the subject a distinction must be noted between wills which contain an express clause of revocation and those which do not contain such a clause. If the later will contains an express clause of revocation, the earlier will is thereby rendered invalid, irrespective of the disposition of property made by the second will; and this is true even if the other provisions of the revoking will prove ineffectual.'

"And again in Section 277 the author says:

" 'The testator may revoke his prior will by a later one which contains a clause of absolute revocation and is properly executed, and which by reason of something outside the will is ineffectual to pass the property sought to be devised. This differs from the case where the second instrument contains a revoking clause and nothing more, for in the cases under consideration the instrument contains a revoking clause and a dispositive portion which fails of effect. The question is whether the revoking clause is conditioned upon the validity of the dispositive part or not. The general rule upon this point is that, a second will inconsistent with the first, perfect in form and execution, but incapable of operating as a will on account of some circumstance dehors the instrument, revoked the first instrument when the second contains a clause of expressed revocation.' "

In the case before the register, the second instrument contains no express clause of revocation and is incapable of operating as a will, not "on account of some circumstance dehors the instrument," but because of the actual failure of sufficient execution for the dispositive purposes of this particular will. An abortive attempt to substitute should not be held decisively to imply an intent to revoke, and actually to revoke, a benefit originally given under a carefully prepared and validly executed instrument.

It is true the second writing is sufficiently executed for the transmission of an estate to objects other than charity, but if the intent of the testatrix is to be considered, and such intent apparently can be considered under the cases cited, it would appear reasonably possible to conclude that the charity originally considered, as a substitute for the later charity, would have been preferred by the testatrix to a complete destruction of her testamentary purpose, resulting in benefit to her heirs at law and next of kin. That an heir at law is to be "disinherited only by words clearly producing that effect" is an ancient and persisting rule of construction, but it is less controlling in our modern system than the rule that imports a desire of a testator not to die intestate. And it is not confusing the principles of construction with probate jurisdiction for the register so to exercise his powers that the court of construction may have before it the entire testamentary scheme of a testator in cases in which there are several instruments equivocal in connection and

fairly open to judicial adaptation, in an endeavor to render effective a testator's intent, for a rule implying testacy has at least equal weight with a rule that determines an *implied* revocation.

In the Ford case, a question of fact regarding the revocatory intent of testator was recognized as existing, upon which a precept might have been awarded. The court, however, determined the sufficiency of the facts, in the absence of any request for an issue. In the present case, there exists a question of fact as substantial as that involved in the case cited, and the court of distribution must have the two instruments before it to determine the questions of fact and of law involved in the distribution.

The register finds that, for the purpose of probate, the instrument of September 1, 1924, does not revoke the paper of June 30, 1924, and that the question of dispositive revocation remains open for the court of distribution.

Probate of the will dated June 30, 1924, having been opened by the orphans' court to enable the register to consider the paper of September 1, 1924, it is ordered and decreed that the instrument dated September 1, 1924, be admitted to probate as a part of the will of this testatrix, this decree to become effective immediately upon the entry of a decree by the orphans' court reëstablishing the probate of the instrument of June 30, 1924, qualified to comprehend inclusion of the instrument of September 1, 1924, under the register's decree.

*Benjamin H. Ludlow*, for petitioner.

*Foulkrod, Sheppard, Porter & Alexander* and *Philip Price*, contra.

HENDERSON, J.—And now, to wit, November 13, 1931, it appearing that it is the opinion of the register of wills that both the instrument dated September 1, 1924, and the instrument dated June 30, 1924, are of testamentary character, and together constitute the last will of the testatrix, Bessie R. McClure, and that both should be admitted to probate, leaving open to the court of distribution all questions as to whether and to what extent the later instrument works a revocation of the earlier; and the probate of the instrument dated June 30, 1924, having been opened by this court to enable the register to consider the paper of September 1, 1924,

It is ordered and decreed that the decree of this court heretofore entered under date of January 7, 1931, be and hereby is vacated and probate of the instrument dated June 30, 1924, be and hereby is reëstablished, qualified to comprehend the inclusion of the instrument dated September 1, 1924, all questions as to whether and to what extent the later instrument works a revocation of the earlier being left open to the consideration and determination of the court of distribution.