## Hildebrand Will.

Argued September 28, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Thomas L. Anderson,* for appellant.

*Charles G. Sweet,* with him *David I. McAlister, Adam L. Sanders* and *McAlister & Sweet,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 13, 1950:

The appeal concerns the partial revocation of a will by obliteration. The pivotal issue is whether an effective obliteration was established.

Emma Grable Hildebrand, the testatrix, was an aged widow, who had resided with her step-son for many years and raised the step-son's daughter, Mildred Hildebrand Dunn. Mrs. Hildebrand died, testate, on April 22, 1946. Her heirs and next of kin were four nieces. The probated, typewritten will was professionally prepared and is dated July 19, 1935. Under the terms of the will $3,000 was bequeathed to Mildred Hildebrand Dunn (child of her step-son), $2,000 to Martha Horn Amos (niece), $1.00 each to Odessie Grable and Maggie Grable Fowler (nieces) and $2,000 to Mary Grable Conkle (niece and contestant). The seventh item of the will, the residuary clause, reads as follows: "Seventh. As to all the rest, residue and remainder of my estate of which I may die seized or entitled to at the time of my death, whatsoever and wheresoever, I give, bequeath and devise to be equally divided among Mildred Hildebrand Dunn, Martha Horn Amos, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ share and share alike."

Mildred Hildebrand Dunn was named as Executrix. Following testatrix's conceded signature and the duly executed attestation clause, and at the spatial end, appear the following unsigned words in the admitted handwriting of testatrix: "I Emma Grable Hildebrand marked off one name in Seventh (7)"

After the death, the will was found in a sealed professional envelope of testatrix's predeceased scrivener-lawyer in the testatrix's safe deposit box.

The present issue was properly raised upon an appeal from probate and not on the construction of the will: *Rockett Will,* 348 Pa. 445, 35 A. 2d 303. Since testatrix died in 1946 the case is governed by sec. 20 (a) and (b) of the Wills Act of June 7, 1917 P. L. 403, 20 PS 271, which expressly provide that any devise or bequest may be revoked ". . . *by . . . obliterating . . . the same by the testator himself . . . .*"

Where testator had custody of the will, the *presumption* is that any obliteration was his own act: *Baptist Church v. Robbarts,* 2 Pa. 110; *Evans's Appeal,* 58 Pa. 238; *Wood's Estate,* 247 Pa. 377, 93 A. 483; *Sando Will,* 362 Pa. 1, 66 A. 2d 312; *Lindeman's Estate,* 141 Pa. Superior Ct. 225, 14 A. 2d 837; *Heller Estate,* 158 Pa. Superior Ct. 194, 44 A. 2d 528. The fact that Mildred Hildebrand Dunn had joint access to the testatrix's safe deposit box will not of itself rebut this presumption. Contestant submitted no proof to the contrary. Mrs. Dunn testified that she had neither seen the will nor knew of its existence before the death. See *Wood's Estate,* 247 Pa. 377, 381, 93 A. 483.

The obliteration, constituting a broad, thick line or smear of ink, approximately two and a quarter by one-eighth inches, wholly effaced, blotted out and rendered imperceptible that which had been written under it. Such method of obliteration is clearly within the Act. There is no requirement, statutory or decisional, which requires the proponent to prove whose name was obliterated or what word or words were obliterated. As the obliteration was complete we need not consider other forms of obliteration, such as lines drawn through a writing or signature: *Evans's Appeal,* 58 Pa. 238; *Heller Estate,* 158 Pa. Superior Ct. 194, 44 A. 2d 528.

Testatrix, in her admitted handwriting at the bottom of the will following its execution, declared that she had *"marked off one name in Seventh (7)."* True she

did not *sign* the writing. But this was unnecessary since presumptively the obliteration was accomplished by her. Unexecuted writings may not revoke a will: *Heise v. Heise,* 31 Pa. 246; *Whitaker's Estate,* 219 Pa. 646, 69 A. 89. Parol declarations are also insufficient to revoke: *Clingan v. Mitcheltree,* 31 Pa. 25; *Porter et al., v. Wolf et al.,* 272 Pa. 93, 116 A. 55. The present revocation, however, was not by either of these methods. It was by *obliteration.* Declarations by testator *in these instances,* are admissible to prove intent to obliterate: *Evans's Appeal,* 58 Pa. 238; *Cummins's Estate,* 37 Pa. Superior Ct. 580. The distinction between an ineffectual attempt to revoke by an unsigned paper, and where an *obliteration* effectively revokes a testamentary provision and unsigned writings or declarations of testator are admitted in evidence merely to explain or reveal testator's intent, is shown by *Williams' Estate,* 336 Pa. 235, 9 A. 2d 377, where this Court said, p. 237: ". . . unsigned writings, on the margins, back or other parts of the paper on which the will was written, even though written after the will was executed and expressing an intention that the will be revoked, [are] not effective, and that the will should be probated and the subsequent writings disregarded: Lewis v. Lewis, 2 W. & S. 455; Heise v. Heise, 31 Pa. 246; Saunders v. Samarreg Co., 205 Pa. 632, 55 A. 763. See also Dixon's App., 55 Pa. 424; White's Est., 262 Pa. 356, 105 A. 549. As is conceded, the writings here in question cannot be considered as a revocation under the first method prescribed by the act, that is as 'a will, codicil or other writing declaring the same,' since they were not signed at the end thereof, a necessary prerequisite to the proper execution of wills: Act of 1917, supra. Nor can they be given effect as a cancellation, obliteration or destruction of the will, *the testamentary provisions of the will remaining untouched by their addition.*" (italics supplied)

Decree affirmed at appellant's cost.