## Edelman Estate

*Paul A. McGinley* and *William George,* for appellant.

*Ray R. Brennen* and *John T. Riley,* for administrators.

GEARHART, P. J., February 5, 1953.—This is an appeal from the action of the register of wills in refusing to accept for probate two instruments purporting to be the last will and testament of decedent, and to his granting of letters of administration to Robert E. Edelman and Eckley G. Edelman. The question involved is one of probate, that is, whether the two proferred instruments were the last will and testament of decedent: Rockett's Will, 348 Pa. 445. For purposes of identification, we will hereinafter refer to the earlier writing as the "first will" and to the later written instrument as the "second will". A hearing was held and testimony presented.

### Findings of Fact

Harvey E. Edelman, a widower, died on September 14, 1952. He left as his only surviving heirs two brothers, to wit, Robert E. Edelman and Eckley G. Edelman.

The first will was dated November 21, 1947, and the second will, entirely in the handwriting of decedent, was dated March 8, 1952. The first will was apparently prepared by the Hon. Ira T. Erdman, a former member of the Lehigh County bar, now deceased. The will was typewritten, witnessed by the attorney and another

person. After the execution of the instrument, decedent in his own penciled handwritng inserted in the first paragraph a direction for the placement of a tombstone in these words: ". . . With tombstone matching my wife's, Lillie Edelman, in Highland Memorial Park Cemetery". The second paragraph has also been altered with lead-pencil lines. The lines run through the name of decedent's wife as a major beneficiary, and through the clause directing the payment of $400 to Robert E. Edelman. Where decedent's wife's name had appeared, decedent has written above it the name "Stanley Schiffner". In the line following, decedent drew a line through the pronoun "her" and wrote the word "his" immediately above, so that the second paragraph, after giving effect to the penciled lines drawn through the writing and to the insertions, now reads:

"Second. All my estate, real and personal, whatsoever the same may be and wheresoever located, I give and bequeath unto *Stanley Schiffner* and *his* heirs and assigns forever". (Italics supplied).

The third paragraph, which provided what should be done in the event that decedent and his wife died in a common disaster, was completely stricken out by penciled-line obliteration.

The final paragraph as revised reads as follows:

"And lastly I nominate, constitute and appoint from Stony Creek Mills, Pa., Stanley Schiffner, above named, as the executor of this my last will and testament".

In this paragraph the name "Herbert E. Edelman" was stricken out by penciled lines, and the words "from Stony Creek Mills, Pa., Stanley Schiffner" were inserted by decedent.

Apparently the date of the first will was also stricken out, but the lines drawn through the date, viz., November 21, 1947, have been removed by erasure or an attempt at erasure, leaving a smudge. It is clear however, that the instrument bore the date of November

21, 1947. And lastly, the instrument bears the signature of decedent and the two witnesses to the will. The signature to the will is unimpaired.

The second will offered for probate with the first will, is entirely in the handwriting of decedent. Decedent apparently had a will form before him when he wrote this instrument. The instrument declares it to be his last will and testament; the first paragraph then follows, in which decedent directs the payment of his just debts, funeral expenses, etc. The second item follows the form of the second item of the first will in this fashion:

"[Second] All my estate real and personal whatsoever the same may be and wheresoever located I give and bequeath unto"

"Third and lastly I nominate constitute and appoint as the executor of this my last will and testament.

In witness whereof I hereunto set my hand and seal this 8th day of March 1952.

Sined sealed published and declared by the undersined Harvey E. Edelman testator as and for his last will and testament in the presence of us who at his request have sined hereunto our names and witness

Included in this will is money in Fogelsville Bank in my name. Also $1500.00 insurance in AAA if killed in auto accident."

The second will bears the signature of decedent, with his address, "Breinigsville, R. 1 Pa. (Route 22)". To the left of the signature and somewhat below it are these words: "Insurance policy of the Woodmen of the World Policy signed over to Geo. F. Jacoby to take care of my burial and expenses".

Both instruments were found by a Mr. George Jacoby and Mr. and Mrs. Eckley Edelman in an envelope in a drawer in decedent's one-room trailer on the day follow-

ing his death. No question of fraud is involved. The question is solely one of whether the instruments as found are the duly executed last will and testament of decedent and as such should be probated.

Appellant-proponent makes two contentions: One, that the first instrument with its alterations and interlineations made by decedent himself, is his executed will, and by making the alterations and interlineations he intended them to be and become part of his will; and that by placing interlineations therein, he reëxecuted his will. He relies on the Estate of John W. Pilhorn, Deceased, 12 Fayette 93. His second contention is that the instrument dated March 8, 1952, while called a will by decedent, is in fact a codicil, and that the alterations in the original paper, having been made prior to the execution of the codicil, the original paper as altered is by the codicil republished and validated, and the will speaks from the date of the codicil. This, he contends, is especially so since the second will did not expressly cancel or revoke the earlier instrument and was not inconsistent with it. In short, he is contending that the first instrument is the will, and the second instrument a codicil, and that they must be construed together as one instrument.

On the other hand, the appellees contend that the interlineations in the first will were not executed in accordance with the Wills Act of April 24, 1947, P.L. 89, and therefore are invalid. They also contend that the later writing is a valid will and as such supersedes and revokes the earlier instrument.

The Wills Act of April 24, 1947, P. L. 89, sec. 4, 20 PS §180.4, provides:

"No will shall be valid unless proved by the oaths or affirmations of two competent witnesses".

Section 5 of the same act, 20 PS §180.5, provides:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:

"(1) Will or codicil. By some other will or codicil in writing.

"(2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, or

"(3) Act to the document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses."

These sections substantially reënact section 20 of the Wills Act of June 7, 1917, P. L. 403.

Examining the first will, we find that decedent attempted (1) to revoke the gift to his wife, she having died, and (2) to revoke the gift of $400 to his brother, Robert E. Edelman.

The Wills Act indicates the manner in which a will or codicil in writing can be revoked or altered. Testator, having once executed his will in accordance with the Wills Act, can only revoke or alter it in one of the ways provided by section 5 of the act. One of the ways provided under section 5(3) (20 PS §180.5(3)) is by obliteration . . . "with the intent and for the purpose of revocation, by the testator himself . . ." It is well established in a number of cases that a cancellation and revocation of a bequest may be effected by lines drawn thereon. (See Heller Estate, 158 Pa. Superior Ct. 194; Sando Will, 362 Pa. 1; Sheaffer's Estate, 240 Pa. 83).

The question of who canceled portions of the will by drawing lines through the various parts, is not in issue. The two instruments were found together in an envelope among decedent's personal papers in a drawer in his home. Since the papers were found in the pos-

session of decedent at his death, under these circumstances it is presumed that the cancellation was done by decedent himself: Lindeman's Estate, 141 Pa. Superior Ct. 225; Wood's Estate, 247 Pa. 377; Sando Will, supra, 1; O'Neill's Estate, 58 D. & C. 351; Baptist Church v. Robbarts, 2 Pa. 110; Evans's Appeal, 58 Pa. 238.

This, however, is not all that decedent did. As indicated, he made some interlineations in his own handwriting, among the more important being the insertion of the name "Stanley Schiffner" where his wife's name had originally been. He also inserted by interlineation the name "Stanley Schiffner" as the executor of his last will and testament. Here again, there is no doubt that decedent made the interlineations, and it appears from the instrument itself and from the testimony adduced, that the interlineations and alterations were made after decedent affirmed his signature to the will. In the absence of evidence to the contrary, there is a presumption that an interlineation or alteration was made after the affixing of the signature to the will: Taylor's Estate, 330 Pa. 346, 350; Baker's Estate, 331 Pa. 33, 35; Estate of Bogart, Deceased, 96 Pa. Superior Ct. 26, 31.

Proponent contends that since the substitution in the way of interlineations was made by decedent himself in his own handwriting, that the legal effect was a re-execution of his will, and that the interlineations together with the remaining unobliterated parts of the will, should be probated as decedent's last will and testament. Undoubtedly, the insertion of the interlineation following the cancellation was an alteration, in that it substituted new legatees for those whose legacies were canceled by decedent's drawing lines through the same. Section 5 of the Wills Act provides not only how a will must be revoked, but also how it may be altered. Section 5(1) of the act states that it must be

done by some other will or codicil in writing: section 5(2); by some other writing declaring the same, executed and proved in the manner required of wills.

Forgetting for the moment the second will of March 8, 1952, it is clear that the attempted substitution made in the first will cannot be probated as a legal part of the will unless there is proof that decedent complied with the Wills Act by making "some other will or codicil in writing" or "by some other writing declaring the same, executed and proved in the manner required of wills". In other words, there must be proof of a republication of the altered will. "Oral republication *of itself* shall be ineffective to revive a will": section 6 of the Wills Act of 1947.

Section 2 of the Wills Act provides how a will shall be executed. Excepting nuncupative wills, the will must be in writing and must be signed by testator at the end thereof. If the first will had to stand alone, we would have no hesitancy in deciding that the substitutionary bequests made by the interlineations were void and of no effect: Swanson Estate, 74 D. & C. 358; Estate of Ducommun, 53 Lanc. L. R. 11; Heise v. Heise, 31 Pa. 246, 249; In re Guth's Estate, 19 Lehigh 351 (1941); Baker's Estate, supra, 33, 35; Williams' Estate, 336 Pa. 235.

However, the proponent points to the fact that there is here another writing which, while decedent has denominated it a last will and testament, is in effect a codicil and was executed by decedent with the intent and purpose that it, with the first will as altered, should be considered the last will and testament of decedent. Appellees, on the other hand, argue with zeal that the designation by testator himself of the writing as his last will and testament, by implication revokes any preceding testamentary writing, and that as will or codicil it could not operate to republish the

earlier will because the term "last will and testament" is repugnant to any intention of republication.

The fact that decedent has called it a will is not conclusive of the question as to whether or not the second instrument is in legal effect a codicil. In Bingaman's Estate, 281 Pa. 497, 506, testator in the body of the instrument called it a will on nine different occasions. Said the Supreme Court in that case:

"The law is not concerned with form but with substance, especially in testamentary dispositions . . . For like reasons, this, or any other testamentary instrument, though called by its maker a will, may, in legal effect, be a codicil. If it is 'some addition to, or qualification of, a last will and testament' . . . it speaks as a codicil, whatever name the testator may have given to it".

Even an express clause of revocation will sometimes be disregarded in extraordinary cases if it appears that testator's real intent was to modify a gift rather than to revoke it: Sloan's Appeal, 168 Pa. 422; Morrow's Estate (No. 2), 204 Pa. 484. Revocation is entirely a matter of intention: Gensimore's Estate, 246 Pa. 216, 219.

And where there is no express revocation, the courts are loath to find an implied one: Elkins' Estate, 339 Pa. 193; Chauncey's Estate, 335 Pa. 73. A will and the codicil must be construed together as one instrument, and the latter revokes the former only so far as repugnant thereto or inconsistent therewith. A codicil is an addition to rather than a revocation of the will: Sigel's Estate (No. 1), 213 Pa. 14, 17. The will and codicil must be construed together as one instrument: Thomas's Estate, 241 Pa. 290; Billings Estate No. 1, 268 Pa. 67. The clear provisions of a will are only affected by a codicil to the extent absolutely necessary to give effect to the codicil: Dutton's Estate, 301 Pa.

94, 97; Chauncey's Estate, supra, 73, 76; Gray Will, 365 Pa. 411.

Examining the second will in the light of the foregoing principles, and having in mind the first will and the fact that the two instruments were found together in an envelope in decedent's possession immediately after his death, the reasonable inference is that the two instruments should be construed together in order to determine whether they represent the legal will of testator and as such should be admitted to probate. Both instruments are in their form and nature testamentary, and both bear the signature of decedent. More than that, the wills indicate that the changes made, both as to obliteration and interlineations, were done by decedent himself. While in the first will decedent revoked certain provisions of his will by obliteration as indicated, it is to be remembered that he had at no time completely revoked his will, i.e., he did not tear it, or destroy it, or mutilate his signature. This is significant. The fact that he did not completely revoke his will but kept it in an envelope together with the later instrument, is some evidence that he regarded the instrument to be his will, and there is nothing in the later instrument which would indicate that he desired to revoke the earlier.

In the second item of the later instrument, he omitted entirely to name the individual unto whom he gave his estate. This, too, is significant. Having by interlineation indicated who was to take his estate, it is reasonable to infer that decedent deemed it unnecessary to repeat in the second will what was clearly covered by the first will. Again, testator did not complete the third paragraph by nominating and appointing an executor. Again, the reasonable inference is that he did not deem it necessary, for the reason that he had appointed an executor in the first will.

The new paragraph that appears in the second will states:

"Included in this will is my money in Fogelsville Bank in my name. Also $1500.00 insurance in AAA if killed in auto accident".

The only significance that we can attach to this statement is that decedent was indicating to his executor that he had money in the Fogelsville Bank and that he carried insurance in the AAA. It was a thoughtful provision, as frequently executors have difficulty in locating the assets of testators. Indeed, as we examine the second will in connection with the first will, there is nothing inconsistent in the two instruments. They are in perfect harmony. Where there is no repugnancy between two papers purporting to be wills, both may be admitted to probate and either can operate as a codicil to the other. (See interesting opinion of Judge Penrose in Cousinery's Estate, 13 Dist. R. 224). If two wills are consistent, as in the case here, the first is not revoked by the second and the two can be treated in legal effect as one will. See Page on Wills, 2nd ed., sec. 437; Price et al. v. Maxwell, 28 Pa. 33; Nelson's Estate, 147 Pa. 160; Gensimore's Estate, supra, 216.

Here, all testator actually did was to say that this second will was his last will and testament, dated it and signed it. By placing it in the envelope with the original instrument, he said in effect: "This is my last will and testament", implying that it and the original will in the envelope was his will. As we have indicated, the second instrument disposed of nothing and did not name an executor, for the reasons we have given. What decedent did do by the second will was to comply with section 5 of the Wills Act, which provides that a will can only be altered by some other will or codicil in writing or by some other writing.

Having dated and signed the second instrument, a republication of the earlier will was effected.

We arrive at this conclusion by an examination of the two instruments and the conditions under which they were found, independent of any parol testimony. However, in addition to the facts found from an examination of the instruments, the proponent called three witnesses, who testified concerning conversations had with decedent.

Mahlon I. Mowery, who was an intimate friend of decedent, stated that in the spring of 1952 until about three weeks before his death, decedent brought up conversations concerning his will. The witness testified:

"It was in July after the 4th of July that Mr. Edelman stated to Mrs. Tobias and myself that he had made a will, but he said he had stricken all the names of the will with the exception of his nephew, a relative of his wife, to be his sole beneficiary. Now he not only stated that one day, but three or four different times after. Finally he made this admission that his nephew was the beneficiary of the will".

The witness stated that in June or July testator held up two papers, a blue paper and a white paper, and stated in Pennsylvania Dutch to him: "I struck everything off, he says, but Stanley".

Another witness, Mrs. Mabel Tobias, a friend of decedent, testified that decedent had told her that he had struck certain people out of the will.

George F. Jacoby, a neighbor of decedent, testified that during May or June of 1952 he visited decedent one evening, and decedent said: "I changed my will", and that decedent laid the two papers on the table "one a printed paper, typewritten, and the other one was a lead pencil, written in lead pencil, and he also told me, he said, 'George', but he asked me this before,

he said, 'Here I have your name that I made my in-
surance out to in your name to bury me to see that I
get buried'. So he had told me that before he was going
to do. So when I come over in the evening one night,
then he showed me the papers. He said, 'I have changed
my will. I crossed all these off, and I put Stanley's
name on the top there', and then he showed me these
two papers, and showed me the one with the lead
pencil written on the bottom where he had an outline.
He said, 'Here is your name, where I put in that I gave
the insurance to you'." And decedent said to the wit-
ness: "This is my will. I changed it".

Appellees objected to the reception of this evidence
by reason of the Act of May 23, 1887, P. L. 158, 28
PS §322, insisting that the witnesses were incompetent
to testify. They especially objected to Jacoby, who has
a claim against the estate.

We think all of the witnesses were competent. They
have nothing to gain or lose, whatever the outcome
of this case. See Dillon's Estate, 269 Pa. 234, 240, for
a discussion of the principles involved. Jacoby was
competent. He was not called to testify in his own
interest. His claim was not before the court. Even
one who has a claim against an estate is competent to
testify in behalf of another claimant, although incom-
petent to testify in behalf of his own claim: Houston's
Estate, 318 Pa. 300, 302.

The testimony of the witnesses was receivable to
show the circumstances surrounding the altering of
the will and to show the intent of testator to obliterate:
Evans' Appeal, supra, 238. Parol declarations and
unexecuted writings may not revoke a will: Heise v.
Heise, supra, 246; Whitaker's Estate, 219 Pa. 646.
In Hildebrand's Estate, 365 Pa. 551, Mr. Justice Allen
Stearne, writing the opinion of the Supreme Court,
points out the distinction between revoking a will or

a part thereof by unsigned writings and parol evidence and admitting this type of evidence "merely to explain or reveal testator's intent". In the latter case the testimony of the witnesses stating what they heard testator say was not receivable for the purpose of revoking or altering the will, but was competent for the purpose of explaining the intent with which the acts were done. Of course, the formal acts of revocation and alteration of a will must comply with the Wills Act, and if they do, under the decisions parol evidence in the form of expressions by testator is admissible to corroborate the apparent character of the instruments: Hildebrand's Estate, supra, 551; Williams' Estate, 336 Pa. 235.

Here testator revoked part of his will by obliteration, and substituted other legacies by interlineations, and he subsequently thereto executed the second will, which he signed. These acts were sufficient compliance with the Wills Act, if done with intent to partly revoke and alter the original will. We have already indicated that we find that testator's intent to revoke and alter his first will can be deduced from an examination of the wills themselves and the surrounding circumstances. Fortifying this finding is the testimony of disinterested witnesses as to what testator did in the way of exhibiting the writings, and his statements of what he had done, all of which is consonant and in harmony with the written instruments. In this case there is no fraud or chicanery. Admittedly, the interlineations were in the handwriting of testator, and so was the later will of March 8, 1952. There can be no doubt of testator's intent. He has coupled with this intent the formal acts required by the Wills Act, i.e., a subsequent writing, testamentary in character, signed by decedent and duly proved, which republished the earlier altered will.

Accordingly, we enter the following decree: Now, February 5, 1953, the appeal from the register of wills refusing to probate the written instruments of November 21, 1947, and March 8, 1952, with obliterations and substitutions, is sustained. The earlier instrument of November 21, 1947, with obliterations made by drawing lines through the various sections of the will, is valid, and the obliterations are effective to revoke those portions of the will. The interlineations found on the instrument, taken together with the later instrument of March 8, 1952, form part of the last will and testament of decedent. The granting of letters of administration to Robert E. Edelman and Eckley G. Edelman is set aside. The record is remitted to the register with directions to admit to probate the two instruments as indicated above. This decree is final.