## Cummins's Estate.

*Will—Cancellation—Legacy—Erasure—Intention.*

Testatrix defaced and obliterated the name of a legatee in a will by drawing a horizontal and diagonal lines through the names. In the clause following this bequest, she also obliterated in the same manner ·the names of two other legatees. Across the two clauses she wrote diagonally the words "Cancelled by death," underneath which she wrote her signature. The words "by death" and her last name extended across the first legacy. There was evidence that the two legatees named

in the second clause were dead at the time the cancellation was made. The legatee in the first clause was living at the time, and this was known to the testatrix, and he survived the testatrix. A witness testified that the testatrix about a year before her death, stated that she had canceled the bequest to the legatee in the first clause, and gave as a reason for such action that she did not wish him to receive any of her money. *Held*, that the testatrix had in fact canceled the bequest to the first legatee, and that he was entitled to take nothing under her will.

Argued Nov. 18, 1908. Appeal, No. 177, Oct. T., 1908, by S. Mason McCollin, M. D., from decree of O. C. Delaware Co., dismissing appeal from register of wills in Estate of Almena Cummins, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Appeal from register of wills.

In addition to the facts stated in the opinion of the Superior Court it appears that the two clauses of the will of the testatrix showing the cancellations were as follows:

The court dismissed the appeal.

*Error assigned* was decree dismissing the appeal.

*W. Nelson L. West*, with him *George T. Butler*, for appellant.— An inspection of the original will shows clearly that the testatrix's intention was to apply the words which she wrote across the face of the three bequests to all three of them. Her signature is practically all on the clause relating to Doctor McCollin's bequest, and from the appearance of the paper

there is absolutely nothing which would indicate that the words of the explanation should be limited to the two bequests to the Misses Service, or that they were to stand on any different footing from the bequest to Doctor McCollin; if such had been her intention there was ample room to have written the words merely upon the bequest to the two women. In fact, the inference would clearly be the other way. The method of striking out the letters is exactly the same in all three bequests and the wording explaining the striking out runs across them in the same manner, showing that the entire cancellation was one act. The testatrix therefore assumed as a fact that all three legatees were deceased. Two of them were dead at the time her will was proven, the third was not. There is therefore a clear mistake of fact as to him, and under the well-settled doctrine of dependent relative revocation her cancellation of the legacy to him was inoperative: Mendinhall's Appeal, 124 Pa. 387.

The oral testimony of Mr. Gilfillan should not have been considered: Nettleton v. Caryl, 20 Pa. Superior Ct. 250; Sutch's Est., 201 Pa. 305.

*Joseph deF. Junkin* and *William I. Schaffer*, for appellee.— A codicil revoking a former will or codicil, or a devise or bequest in a will or codicil, because of the mistaken apprehension of the existence of a fact, will not be given that effect; but a codicil making a deliberate, independent revocation of a former will or codicil, though there be a mistaken apprehension of the existence of some other independent fact, will be a revocation: Attorney General v. Ward, 3 Ves. Jr. 327; Campbell v. French, 3 Ves. Jr. 321; Mendinhall's App., 124 Pa. 387; Dunham v. Averill, 45 Conn. 61.

When the will is traced from the hands of a testator and found altered or mutilated, or not found at all, it is presumed to have been altered, mutilated or destroyed by the testator himself animo revocandi, and the burden of proof is on those seeking to establish the entire will to repel this presumption: Betts v. Jackson, 6 Wend. 173; Idley v. Bowen, 11 Wend. 227; Minkler v. Minkler, 14 Vt. 125; Bulkley v. Redmond, 2 Bradf.

281; Davis v. Sigourney, 49 Mass. 487; Johnson's Will, 40 Conn. 587; 1 Jarman on Wills (5th Am. ed.), 133, 283, note 7.

The legal presumption is strongly corroborated by the declaration of the testator himself to other parties: Russell v. Frisbie, 19 Conn. 205; Douglas v. Chapin, 26 Conn. 76; Armstrong v. Morrill, 81 U. S. 120; Travellers' Ins. v. Mosley, 75 U. S. 397.

The cancellation by a testator of a portion of his will is a valid revocation of the bequest so canceled: Bigelow v. Gillott, 25 Am. Rep. 32; Tomlinson's Estate, 133 Pa. 245.

The court below found that the witness Robert G. Gilfillan was a competent witness. No specific exception was taken to this finding, and no attempt is made in the argument of appellant to controvert the finding.

OPINION BY HENDERSON, J., December 7, 1908:

If it were made clearly to appear that the legacy to Dr. McCollin was cancelled by the testator under the impression that the legatee was dead, the doctrine of Campbell v. French, 3 Vesey, Jr., 321; Mendinhall's Appeal, 124 Pa. 387; and kindred cases, would save the bequest because it was revoked under a mistaken apprehension, but we agree with the conclusion of the court below that it not only does not appear that the cancellation of the legacy was made under such misapprehension but that the evidence shows that it was made for a different reason. The legacy was annulled in accordance with one of the methods permitted by the Act of April 8, 1833, P. L. 249, independently of the superimposed words of cancellation, and the presumption is that such obliteration was made either before the will was signed, or after it was executed, with the intention of revoking the particular bequest. The words written across the face of the bequest do not explain themselves, but in the light of extraneous facts disclose the testator's motive with reference to that part of the will to which they refer. There is nothing on the face of the will which necessarily relates these words to the legacy to Dr. McCollin. It is only because they extend from that portion of the will containing the Service legacies on to the part con-

taining the bequest to the appellant that the fact is assumed that the testator had reference not only to the Service but the McCollin bequests. It is evident that these words were not written by the testator to effect a cancellation but rather to give her reason for her action, for the bequests to Dr. McCollin and to Elizabeth Service and Mary Service are effectually stricken from the will by defacing and obliterating the names of these legatees. It is to be noted that the word "cancelled" in the superimposed words is written across the Service bequest, and that the clause of the will relating to Dr. McCollin is only affected by an extension of the remainder of the sentence and a part of the testator's name. It could hardly be contended that in the absence of the defacing marks on the McCollin bequest the words in question would have the effect to destroy the bequest to him. When resort is had to other evidence than the will the significance of the inscribed words becomes apparent, for the legatees named in the Service bequests died before the testator and therefore could no longer be objects of her bounty. This fact makes what was written across the will intelligible and reasonable in explanation of the testator's conduct with reference to the cancellation. The burden is on the appellant to show that the legacy to him was cancelled on the mistaken supposition that he was dead. This he undertakes to do by showing that he is alive and contending that the explanatory writing relates to the legacy to him as well as to the Misses Service. As there is no evidence that the testator believed the appellant to be dead, except that inferable from these words, and as it appears without controversy that they truthfully refer to the Service legacies, we think there is not such a necessary reference to the bequest to the appellant as to justify the conclusion that the testator cancelled his legacy because she thought he was dead. If there is any doubt about this, however, the evidence offered shows that the cancellation of the McCollin legacy was for another reason. The testimony of Mr. Gilfillan is that in a conversation with the testator about a year before her death she told him that she had cancelled the bequest to Dr. McCollin in her will, and gave as a reason for

such action that she did not wish Dr. McCollin to receive any of her money. It is necessarily implied in this statement of the testator that she knew that Dr. McCollin was living at the time of her conversation with the witness, and at that time she referred to the legacy as having been cancelled. There is further evidence that the family of the testator and the family of Dr. McCollin were intimate, and exchanged visits, and presumably lived in the same vicinity, all of which is inconsistent with the theory that the testator believed at the time of the alteration of her will that Dr. McCollin was dead.

The suggestion was made at the argument that Mr. Gilfillan is an interested witness, being a legatee under the will, and therefore not competent, but that point does not seem to be pressed. Any objection to his testimony is rather to its weight than its competency. It was credited by the court below and no reason has been presented why it should not be now. It is not unreasonable or improbable, and is in no way contradicted. It was not offered, as seems to be supposed by the learned counsel for the appellant, to reform an instrument on the ground of mistake, but to identify the legacy to which the inscribed words refer. Without explanation they would be meaningless, and it was competent to show by parol that they had reference to the Service bequests. The decree is in accordance with the evidence and the law applicable to the case and is therefore affirmed.