## Sheaffer's Estate.

*Wills—Probate—Issue devisavit vel non—Mutilated paper.*

1. A decree of the Orphans' Court refusing an issue devisavit vel non, and affirming the admission of a writing to probate, will not be reversed where it is uncontroverted that the testator, possessing full testamentary capacity, executed the paper as his will in the presence of two subscribing witnesses, that shortly before his death he designated a box as the place where his will would be found, that after his death the will was found by the executor named therein in the place designated, with the first page torn off, and that after the statement made by the testator as to the place where he kept his will, neither he nor any one else had opened the box until after his death.

2. In such a case it is for the court to determine whether the writing was a valid testamentary paper. If it determines this

question in the affirmative, questions as to whether all the provisions in the will are enforceable in view of the destruction of the first page, will be considered in later proceedings.

Argued Feb. 12, 1913. Appeal, No. 377, Jan. T., 1912, by Amanda S. Leaman and Mary J. Landis, from decree of O. C. Chester Co., dismissing appeal from register of wills in estate of John Sheaffer, deceased. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from action of register of wills in probating a will.

BUTLER, J., filed the following opinion:

It is practically conceded and the evidence demonstrates, that on the thirteenth day of April, 1908, the deceased regularly and legally executed a testamentary paper in the presence of two competent subscribing witnesses; that he then made a will valid and sound in every detail, and the opposition to its probate rests not at all on any question touching its original validity, but exclusively upon the fact that when viewed immediately after the deceased's death, the first page, which contained some testamentary dispositions, was missing. The paper names Abram Herr as sole executor and was found by him locked up in the box of a buggy, where the deceased, shortly before his death, stated the paper would be found. The legal presumption arises and prevails that the deceased removed the first page of the paper.

We start then with a valid will, duly executed as to every word and line of its contents, and it is now the deceased's will unless his removal of the first page subsequently to its execution is to be interpreted as its repeal. Under Section 13, Act of April 8, 1833 (P. L. 249), this will is not repealed unless it was the testator's intention to repeal it, and in Evans' Appeal, 58 Pa. 238, it is decided that while a will may be repealed by acts

done upon it that do not physically completely destroy
it, the court there say: "Undoubtedly it must be an act
done to the will itself and must be done animo cancel-
landi." If standing alone, deceased's removal of the first
page of his will,—leaving the balance, inclusive of his
duly attested execution, intact,—would warrant an in-
ference that he intended to repeal his entire will, to can-
cel this remaining part which he had retained under
lock, such inference would be answered and overcome
by the fact fully and convincingly proved, that after he
had removed the first page of the paper, he viewed and
referred to the remaining part, as his will, telling his
daughter-in-law that he believed he would not get well,
that his will would be found in the buggy box, the key
of which was in his little pocket book, and that she
should tell Mr. Herr, who would attend to the matter.
The evidence shows that after this conversion, owing to
his infirmity and removal to the hospital, the deceased
in all probability had no opportunity to reach the will
and remove the first page. We see no reason to doubt
the truthfulness of the daughter-in-law, nor indeed, of
any of the witnesses, for there has been no determined
purpose shown to use the paper, but rather an acqui-
escence in the view that it was valueless. Our case is,
in principle at least, similar to In re Pomeroy, 1 Berks
County Law Journal, 331, where the will had been much
mutilated by the testatrix, all of the dispositive portions
of the codicil having been torn off, and the testatrix had
made statements relative to the location of the paper,
&c., indicating her recognition of it as her will. Judge
BLAND says: "There is no question that the will in this
case was well executed, with all the formal requisites
prescribed by the statute.......It is always competent
to show in cases of this character, the actual intention,
where such acts are done by a testator, and that the in-
tention implied by the physical acts, did not in fact exist.
In the absence of evidence to the contrary, the writings
having been in the possession of the decedent, the pre-

sumption is that she mutilated them for the purpose of revoking the dispositions contained in the removed part. The presumption goes no further." In Wikoff's Appeal, 15 Pa. 281, the court say: "The very case that the appellant would establish was ruled in Sutton v. Sutton, 2 Cowp. 812, in which it was held that a will may be good, though other parts of it may have been obliterated by the testator, subsequent to the execution of it." In Tomlinson's Estate, 133 Pa. 245, after testator's death, his will was found in a locked drawer, the key to which, shortly before his death, he had given to a relative, with instructions to deliver it to the executor. Subsequently to the execution of the will, lines had been drawn through seven of the bequests, and the circumstances present raised the presumption that this had been done by the testator. The execution of the will was regularly proved. The paper as thus changed by the testator was held to be his will. In this case, the auditor before whom the questions involved came, in the first instance, says: "It cannot be held that the cancellation or alteration, if such it be, of these bequests, operated as revoking the entire will, but if a revocation, it had only that effect upon the particular bequests themselves. A revocation by obliteration may be either partial or total; where a pen is drawn over part of a will only, a revocation is effected pro tanto, and the unobliterated portions remain in force: Jarmon on Wills, 291. In Cook's Will, 5 Clark 1, the court cites Roberts v. Round, 3 Hagg. Ecc. 548, which held that when the first part of a will had been mutilated and different parts cut out, Sir John Nicholl, carrying out the principle, says: "This mutilation of the first part, leaving the signature untouched, would not be a total revocation; it would be a revocation of the parts of the devises only." In Burns v. Burns, 4 S. & R. 295, it is clearly shown that where the question is whether a duly executed will has been revoked, the testimony of a single witness is sufficient to meet and overcome an inference of a purpose to revoke, arising

from acts done upon the paper, by the testator. The court say: "The Act of Assembly is silent as to revocation in law, such as burning, cancelling, &c., therefore when questions arise on such revocations, they must be proved as other matters of fact, without regard to the form prescribed by the Act of Assembly for the probate of a will." On principle and in view of the cited authorities we are unable to agree with counsel for appellants that two witnesses must be produced to show that after the deceased removed the first page of his will, he republished it, re-declared it to be his will. Every requirement of the law touching the execution of a valid will by the decedent is met and complied with in this case, without any attempt at contradiction, and the only controverted question is, whether this legal will was, subsequently to its execution, repealed by the decedent. As we have seen, the law does not provide for any exact measure or character of proof, upon such an issue, and the question whether a decedent intended to cancel all or any part of his will is one of common fact to be determined either upon an unaided inspection of what he has done upon the paper, or through such inspection, aided by extrinsic evidence bearing upon his intention. If a consideration of what he had physically done to the will, does not fairly demand a conclusion that he intended to revoke, the paper will be probated without aid from outside facts, and if what he has done upon the paper, standing alone, indicates a purpose to revoke, such indication and consequent inference may be overcome by evidence of his declarations and conduct negativing such purpose, and this extrinsic proof may be as satisfactorily and sufficiently made by a single witness who is believed, as by two or more. We conclude that the deceased's lawfully executed will was cancelled only as to the page which he removed subsequently, and that the balance of it as here presented, survives as his will, and as such is entitled to be probated.

Charles v. Huber, 78 Pa. 448; Derr v. Greenawalt, 76

Pa. 239, and Simrell's Est., 154 Pa. 604, relied upon by counsel for appellants, as we understand them, do not at all deal with the question whether a duly executed and valid will had been revoked in whole or in part by acts subsequently done upon it by the testator. In Charles v. Huber, there was a failure to prove by two witnesses the execution of the will, either in the original form, or as altered. In Derr v. Greenawalt, the question presented was not whether a lawfully executed will had been subsequently revoked in whole or in part, but whether it had been executed originally, as respected the residuary clause, the name of the residuary legatee having been filled in after the will was executed. There was a failure to prove by two witnesses that the name had been written in by the executor or at his direction, and it was therefore held that the proof was insufficient to support the execution of this part of the paper. In Simrell's Estate, it was undisputed that after the will was duly executed, certain erasures were made, not by the testatrix, but by her daughter, and the daughter alone testified that her action was directed by the testatrix. It was therefore held that these erasures were not duly proved to be a part of the will, and must be ignored.

In our case it is regularly proved without question, that the deceased executed a valid will, and that will, just as he executed it, excepting only the first page which, as the law presumes, he had removed, is presented for probate. For the reasons given we are satisfied that the deceased intended to revoke only the first page, and that the part remaining, and here presented, is his will. Whether some part of it may prove to be unintelligible and therefore not enforceable, because of the absence of the first page, as was suggested at the argument by appellants' counsel, is a matter of construction that will arise later.

The appeal is dismissed and the action of the register of wills in probating the writing propounded for pro-

bate as the last will and testament of John Sheaffer, deceased, is affirmed.

*Error assigned* was decree dismissing the appeal.

*A. M. Holding,* with him *W. U. Hensel,* for appellant. —A cancellation of parts of a will which leaves the remainder incomplete revokes the entire will: Leonard v. Leonard, 71 L. J. P. D. & A. (N. S.) 117; Dammann v. Dammann, 28 Atlantic Repr. 408; Murry v. Murry, 6 Watts 353; Shipler's App., 3 Penny. 272; Evans' App., 58 Pa. 238.

Even if the court below were not justified in holding that the entire will was revoked, nevertheless, it should have granted an issue and submitted to a jury the question of the intention of the testator in mutilating the paper: Doe v. Perkes, 3 Barn. & Ald. 489; Goods of Colberg, 2 Curteis Eccl. 832; Giles v. Warren, L. R., 2 Probate and Divorce 401; Gardner v. Gardner, 177 Pa. 218.

The will as left by the testator and probated, was not proved as required by law, that is, by two witnesses.

The will, as originally drawn and executed, was proved, but that is not the will before us. The destruction of the first page of this will destroyed and took away the description of the object of the devise to which the first portion of the paper relates: Eschbach v. Collins, 61 Maryland 478; Larkins v. Larkins, 3 Bosanquet & Puller 16; Miles's App., 68 Conn. 237 (36 Atl. Repr. 39); Derr v. Greenawalt, 76 Pa. 239; Charles v. Huber, 78 Pa. 448; Simrell's Est., 154 Pa. 604; Patterson v. English, 71 Pa. 454; Sunday's Est., 167 Pa. 30.

*Thomas W. Pierce,* with him *Frank S. Groff,* for appellees.—The paper left by the testator satisfies the statute of wills. It is testamentary in form, signed by him at the end thereof, and its contents are intelligible and capable of construction. There is nothing in the testimony to show, that he did not intend it to operate

as his will, as is presumed, under the authorities, from the evidence presented: Jarmon on Wills, *134; Wikoff's App., 15 Pa. 281; Tomlinson's Est., 133 Pa. 245.

OPINION BY MR. JUSTICE BROWN, March 24, 1913:

That John Sheaffer, possessing full testamentary capacity, executed his will on April 13, 1908, in the presence of two subscribing witnesses, is an indisputable fact; that the paper admitted to probate was that will, with the first page torn off, is another indisputable fact; and that he intended that this paper, in that shape, should be regarded as his will was clearly established as a fact by the unimpeached testimony of witnesses whose competency is not questioned. In February, 1910, the deceased, who had been ill for a long time, was taken from his home near Christiana to a hospital in Lancaster. Just before he left he said he thought he would not get well, and that his will would be found in a buggy box, the key to which, he added, was in his pocketbook. After making this statement he was not out of the house until he was taken from it to the railroad station, where he met his physician, who accompanied him to Lancaster. In a short time he was brought back from the hospital and the day after his return died at his home, to which he had been taken on a cot or stretcher. Abram M. Herr, the executor named in the will, having been informed of what the decedent had said just before starting for the hospital, got the key to the buggy box just where the decedent had said it would be found. When the box was opened there was found in it the paper which the decedent had declared was his will; and just in the shape in which it was found it was offered and received for probate. Under this state of facts, either admitted or clearly established, there was nothing for a jury to pass upon, and the issue prayed for was properly refused. It was for the court alone, under the circumstances, to say whether the writing which the register had admitted to probate was a valid testamentary

paper, entitled to be admitted to probate as the will of John Sheaffer. In a characteristically well-considered opinion the learned judge below has shown that it is such a paper. The right to have it admitted to probate is the sole question in this proceeding. Whether all the provisions of the will are enforceable is a postponed question, to be met when raised.

We forbear adding anything further to the opinion of the court below, for upon it the decree ought to be affirmed. Let it be so affirmed at the costs of the appellants. Decree affirmed.