---

## ιel v. Marsh, Appellant.

*Trespass—Deceit—Pleadings—Evidence.*

In an action of deceit for trespass in order to entitle the plaintiff to recover, he must aver in his pleadings that the defendant made certain false statements, and prove at the trial, not only that the statements were made as averred in the pleadings, but also that the statements were false, and that he was deceived by them.

Argued May 6, 1914.  Appeal, No. 121, April T., 1914, by defendants, from judgment of C. P. Allegheny Co., July T., 1912, No. 1,709, on verdict for plaintiff in case of Albert B. Immel v. Elizabeth A. Marsh and William Marsh.  Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.  Reversed.

Trespass for deceit.  Before REID, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $855.  Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*P. H. McGuire*, for appellants.—To sustain the plaintiff's action he must show affirmatively that the conduct of the defendants induced him to act differently than he otherwise would have acted—that his action was induced by the deceit; that there was a false. repre-

sentation of a "matter of substance," a material matter, important to his interests, and which actually misled him to his hurt: Fulton v. Hood, 34 Pa. 365; Cox v. Highley, 100 Pa. 249; Huber v. Wilson, 23 Pa. 178; McAleer v. McMurray, 58 Pa. 126.

*James A. Wakefield,* for appellee.

OPINION BY PORTER, J., July 15, 1914:

This action is in trespass and the statement filed by plaintiff brings it within the operation of the principles applicable in an action on the case for deceit, at common law.   The deception of which the plaintiff complains was alleged to have been practiced in negotiations which led up to the execution of a lease, and collateral agreements, for a building in the borough of Homestead. The result of the negotiations was that the defendants and the plaintiff entered into a written agreement, on January 15, 1912, under the provisions of which the former leased the building to the latter, for the term of five years, at the yearly rental of $1,500, payable in equal monthly installments.   The parties at the same time entered into a written supplemental agreement, referring to the lease, under which the lessors covenanted to permit the lessee, the plaintiff, to sell out his business after two years, and to give to his purchaser a lease for five years from date of sale, at the same rate of rent set forth in said lease and under the same conditions; and the lessors further agreed that in case Immel was refused a license to hold him only for one year's rent thereafter and permit him at the end of said year upon giving four months' notice in writing to terminate the lease.   There can be no question that these agreements must be construed together and that their effect was to give Immel control of the property for practically ten years, with the right in Immel, during the first five years, to terminate the lease at the end of any year, in case he was refused a license to sell

liquor. Immel paid to the defendants at the time of the execution of these contracts, the sum of $750, as a bonus for the rights which he thus acquired. The house had been licensed for about twenty-five years to sell liquor at retail, there had been a change of persons holding the license for the house during that period, but how often does not appear. Murray Barr had held the license for the house during the eleven years terminating May 1, 1912. It is conceded that it was within the contemplation of the parties that Immel should apply for a license to sell liquor at retail upon the leased premises. Immel applied for such license to the court of quarter sessions of Allegheny county, and, after a hearing, the application was refused. The record of Immel's application for license was not offered in evidence, and the court below and the jury were left in the dark as to whether that record disclosed the cause of the refusal of Immel's application. It was assumed by all the parties at the trial in the court below that Immel's application for a license was refused. After the application for license had been refused Immel did not desire to take possession of the premises, and the defendants voluntarily released him from liability for the rent for one year, for which under the covenants of the lease and the supplemental agreement they might have held him.

Immel subsequently brought this action to recover the amount of the bonus which he had paid the defendants in order to procure the execution of the lease, averring that the defendants had induced him to execute the contracts and pay the money by false and fraudulent representations. The deception of which this plaintiff asserts he was the victim is thus averred in his statement: "The defendants, for the purpose of inducing the plaintiff to pay the sum of $750, and entering into a lease for five years for the premises aforesaid, for the rent aforesaid, with Elizabeth A. Marsh, the owner of the title to the same, did willfully, knowingly, falsely

and fraudulently, and with intent to cheat and defraud plaintiff, then and there aver and protest that the then present tenant, Murray Barr, was refused by them an extension of lease for the year from May 1, 1912, to May 1, 1913, for the reason that he had failed to conduct said house in an orderly and satisfactory manner to them, and had failed to keep the same in good repair, and that nothing had been done by them to endanger the granting of a license to the applicant for said house. And the plaintiff relying upon said false and fraudulent statements, made willfully as aforesaid, did then and there on January 15, 1912, enter into a lease with the said Elizabeth A. Marsh for said premises . . . . and paid to the said Elizabeth A. Marsh and William Marsh a bonus for same the sum of $750." These are the only false and fraudulent representations which the defendants are in the statement averred to have made. The statement then proceeds to aver that Immel made application for a retail liquor license for said premises and that at the hearing upon said application by the court "it was developed that the defendants had deceived the plaintiff and that instead of, as represented by them to the plaintiff, their having refused the then tenant, Murray Barr, an extension of lease for his alleged failure to conduct said house in an orderly and satisfactory manner to them and keep the same in good repair, they had on August 29, 1911, in writing, notified the said Murray Barr that the business belonged to them and that unless he, the said Murray Barr, paid them the sum of $1,200 for the said business they would not extend the lease, which notification with the threats therein contained was produced before said Honorable Court, and thereupon said Honorable Court refused said application."

The defendants did not demur to this statement, and we do not deem it necessary to consider whether it properly averred a good cause of action. It was not sufficient, in order to entitle this plaintiff to recover, that he should aver in his pleadings that the defendants

made certain false statements.   He must prove at the trial not only that the statements were made, as averred, but he must also prove that the statements were false and that he was deceived by them.   The plaintiff's failure in his proofs was absolute and complete.   There is not in the case a scintilla of evidence that either of the defendants represented to the plaintiff that they had refused to extend the lease of Murray Barr for the reason that he had failed to conduct the house in an orderly manner and satisfactory to them, or that Barr had failed to keep the house in good repair, or that nothing had been done to endanger the granting of a license to the applicant for said house.   The plaintiff, who was the only witness who testified in his behalf as to what representations these defendants made, did not pretend to swear that the defendants had told him that the reason for refusing the extension of the lease of Barr was because he had not kept the house in an orderly and satisfactory manner to them, nor did he testify as to anything from which a jury should have been permitted to infer anything of that kind.   He did not testify nor did any witness in the case testify that these defendants had represented to him that nothing had been done to endanger the granting of a license to the applicant for said house.   This plaintiff could not recover under this statement by evidence tending to show that the defendants had intentionally or mistakenly misstated some fact not referred to in the statement, he must recover for the deceit alleged in his statement, if at all.

Even if the plaintiff had proved, which he did not, that the defendants had represented to him "that nothing had been done to endanger the granting of a license to the applicant for said house," he would not have been entitled to recover.   The plaintiff, in an action for deceit, can only recover in case he is deceived.   The complaint of the statement is that in writing the letter of August 29, 1911, the defendants had done something to endanger

the granting of a license to the applicant for the house. The mere writing of a letter could not, of course, be reason for refusing a license; a letter only becomes objectionable because of its contents. The letter in question was written under the following circumstances: Barr had for a number of years been the tenant in possession of the house and had a retail liquor license; he was tenant from year to year. He desired to sell out and found that he would be able to do so to much better advantage if he could secure a lease of the premises for five years, and this fact had been communicated to the owners, these defendants. The letter in question was written with a view to the proposed lease for a period of five years, as is distinctly shown by its opening sentence: "I understand that you have an opportunity to sell your interest out of the business, providing we will give the buyer a lease for five years." It is not necessary that we quote the letter at length, its whole tenor and effect is the declaration of a purpose not to execute a lease for the period of five years unless the owners are paid a bonus of $1,200 for such lease. It means, by clear implication, that the owners will, upon the payment of a bonus of $1,200, execute a lease to any purchaser procured by Barr, the lease to call for the same annual rental that Barr has been paying. The letter was only a demand that Barr should pay $1,200 for the extension of the lease for five years which he desired, in order to enable him to sell to advantage. Now, every witness who testified in this case distinctly said that this plaintiff knew, at the time he was negotiating for the lease, that the defendants had in the previous year demanded a bonus of Mr. Barr, as a consideration for giving him a lease for five years. Each one of the defendants testified that they had told this plaintiff about the desire of Mr. Barr to sell out in the previous year and that they had demanded a bonus of $1,200 as a consideration for the extension of the lease for five years. The witness Stahl testified that he had

heard Mr. Marsh tell Immel about the Barr bonus of $1,200 demanded of Murray Barr. "Yes, sir. He said he would not rent the place for five years unless he would get a bonus. He said he didn't do it to Mr. Barr and he wouldn't do it to anybody else, that he would rent it to him year by year without a bonus." Murray Barr testified that he had a conversation with Mr. Immel, before the latter leased the premises, as follows: "I told him, 'Now,' I says, 'the reason I am leaving,' I says, 'I have been here for eleven years now and the reason I am leaving, I want to sell out, and he wants $1,200, and then he wants to run the place himself, have that license himself in here, and if I don't give him the $1,200, he wouldn't give me the five year lease.' I says, 'If I was you, you watch yourself and don't sew yourself up for any money consideration, because you can't tell how the thing will go.'" But more than all this the plaintiff himself testified that he had been told, before the lease was executed, of the demand which had been made upon Barr. "Q. Did they (the defendants) tell you the only thing was that they demanded $1,200? A. They said they had demanded $1,200 the year before, when they went to sell out, and Barr refused to pay it and the deal didn't go through." It thus appears, from the testimony of every witness in the case, including the plaintiff, that the plaintiff knew, before the lease was executed, that the defendants had made this demand that Barr should pay $1,200 as the consideration for a lease for five years. Even if it be conceded that the making of this demand of Barr, in the previous year, was something which might endanger the granting of a license to the applicant for the house, the plaintiff was acquainted with the facts, he was not deceived, and he cannot recover damages in an action of deceit. The prayer of the defendants for binding instructions ought to have been affirmed. All the specifications of error are sustained.

The judgment is reversed.