Heller Estate.

Argued September 27, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*E. Arnold Forrest,* for appellants.

*Morris Gerber,* with him *Wisler, Pearlstine, Talone & Gerber,* for appellee.

OPINION BY RHODES, J., November 19, 1945:

These appeals are from the final confirmation of the adjudication in the estate of Lavinia Faith Heller, de-

ceased. Decedent died testate in April, 1943. She had no issue, and her husband had predeceased her in 1938. A number of collateral relatives survived, and they are named in the stipulation filed in the court below. Her last will and testament was dated December 30, 1940. The will is a holographic one.[1] It first directs the payment of debts and funeral expenses. Then follows, on the left side of the page in a column, four names—Alfred W. Burhouse; LeRoy Whitman; Janet Burhouse; Margaret Cohen. Written in ink in the margin to the left of the name of Janet Burhouse is the word "sister." To the right of the last name, also written in ink, are the words "Share alike." Alfred W. Burhouse is named "Executrix." Finally there is a specific gift to Janet Burhouse, sister of testatrix, of all things in the home, with the precatory words that she is to "take or give away anythings you like sell nothing please. Also take care funeral."

The names of the four residuary beneficiaries were crossed out or obliterated by pencil marks. To the right, and above the words "Share alike," written in pencil, appears the following: "know good

"write another"

All the names were obliterated, apparently by the broad side of the lead of a pencil drawn over each name with pressure. Between the names light lead marks are present. Although the obliteration is quite complete, the names are discernible.

The question presented is whether this residuary clause of the will was revoked by the penciled marks and notation.

The court below, in its opinion confirming nisi the adjudication, said it was "convinced that the markings on the will were not intended by the testatrix and therefore are not a cancellation, and that the will stands as originally written."

---

[1] The will was written in ink on the back of an unsigned typewritten will, apparently prepared for testatrix in 1931.

The will of the testatrix was found in a wooden box, with other papers, in a cabinet in her home. A presumption follows, in the absence of evidence to the contrary, that the act of alleged revocation was that of the testatrix (*Baptist Church v. Robbarts,* 2 Pa. 110; *Wood's Estate,* 247 Pa. 377, 383, 93 A. 483), and that the penciled marks were made and the words written after the completion of the will (*Baker's Estate,* 331 Pa. 33, 35, 200 A. 65; *Teed's Estate,* 225 Pa. 633, 637, 74 A. 646; *Bogart's Estate,* 96 Pa. Superior Ct. 26, 31).

There is also a presumption, if the mutilation and defacement amount to a cancellation or obliteration, that the testatrix acted animo revocandi. *Tomlinson's Estate,* 133 Pa. 245, 259, 19 A. 482; *Cummins's Estate,* 37 Pa. Superior Ct. 580, 583. There is no doubt about the validity of a cancellation or obliteration in lead pencil. *Tomlinson's Estate,* supra, 133 Pa. 245, 258, 19 A. 482. Cancellation or obliteration does not mean an effacing so that the letters or words cannot be read. *Evans's Appeal,* 58 Pa. 238, 244.

We are of the opinion that the testatrix's acts constituted a cancellation of the residuary clause, and that she intended the result which those acts signified—a revocation of the bequests under section 20, paragraphs (a) and (b), of the Wills Act of June 7, 1917, P. L. 403, 20 PS §§ 271, 272.[2]

The court below considered the words "know good write another" as indicative that the markings in the will were deliberative only. We do not believe this circumstance has such an implication. We think the words show a definite present intent rather than a contemplated future act to bring about a complete revocation. It is difficult for us to conceive of a more definite and conclusive cancellation of a clause or bequest in a will than appears in this will; and the written words are confirmatory of a revocatory intention, and indicate that

_____

[2] These sections are taken from sections 13 and 14 of the Act of April 8, 1833, P. L. 249.

a revival of the residuary clause or any part thereof would require another will or a codicil.

The court below described the pencil markings over the four names as a smudge, and was of the opinion that it did not constitute a cancellation or obliteration. Cancellation or obliteration of a clause or bequest does not need to be in any prescribed form to be a compliance with the statute. The court in its opinion concluded that "the smudge was made by the testatrix in a contemplative mood when she might have been considering a cancellation or the alteration of her will at some future time, and is more in the nature of an indication of her thought as to what she intended to do rather than the execution of a then present act." A smudge is not an accurate description of the pencil markings over the four names. We entertain no doubt but that the markings were cancellations made with the intention to revoke that portion of the will, although the side rather than the point of the pencil was used for the purpose. The method of revocation by cancellation is largely optional, and is not in itself important (*Evans's Appeal,* supra, 58 Pa. 238, 244, 246), and we think the method in the present case was as final and effective as if a single line through each name had been used, or there had been superimposed a series of x's over the names. The intention of the testatrix to cancel the residuary clause or the bequests is as decisive and clear as if she had used some other method. The pencil markings and the written words, as we view them, speak for themselves. "How can we say it was not the intention of the [testatrix] to make these cancellations, when in reality [she] has made them": *Tomlinson's Estate,* supra, 133 Pa. 245, 258, 19 A. 482, 483.

In *Baker's Estate,* supra, 331 Pa. 33, 200 A. 65, two provisions of the will were crossed out by pencil lines and thus revoked. In *Lindeman's Estate,* 141 Pa. Superior Ct. 225, 14 A. 2d 837, a bequest was canceled by a single line drawn through the name. In *Cummins's Es-*

*tate,* supra, 37 Pa. Superior Ct. 580, horizontal and diagonal lines were used to obliterate the name of a legatee. In *Evans's Appeal,* supra, 58 Pa. Superior Ct. 238, lines were drawn through the will and through the signature at the end thereof, and the word "Cancelled" was written under the signature; it was held that the will was repealed by the acts of the testator. In *Tomlinson's Estate,* supra, 133 Pa. 245, 19 A. 482, a pencil cross appeared either to the right of or partly over the word "Item," prefixed to each bequest, and pencil lines were drawn horizontally across the paper through the body of the bequests; in some places a single line; in others two or more lines.

We are of the opinion that the action of the testatrix was conclusive, and that the testamentary disposition in question was revoked by cancellation.

The decree of the court below is reversed, and the record is remitted with direction to modify the adjudication in accordance with this opinion, and make the distribution accordingly. Costs are to be paid by appellees.