## Swanson Estate

*Charles I. Houston*, for proponent.

*John H. Cartwright*, contra.

HIPPLE, P. J., August 24, 1950.—On April 3, 1950, an opinion and decree nisi were filed sustaining the appeal from the decision of the register of wills admitting to probate a certain instrument in writing with erasures and substitutions as integral parts thereof, as the last will and testament of Charles R. Swanson, deceased, setting aside the probate thereof, the grant of letters testamentary thereon, and remitting the record to the register of wills for further proceedings in accordance with the adjudication.

Proponent, George A. Swanson, filed exceptions to the findings of fact, and conclusions of law, and the decree nisi, which can be considered without specific reference to each exception.

The second, third, fourth and fifth exceptions are sustained because the court was in error in holding that by the death of Axel Swanson, the only legatee and devisee named in the will, the legacy or devise to Axel lapsed. It was shown that Axel Swanson had at least one lineal descendant, George A. Swanson, his son, and

therefore under section 14, par. 8 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180-14, if no erasures or substitutions had been made in the original instrument, the devise or bequest to Axel would not have lapsed but would have passed to his surviving issue.

Proponent specifically excepts to the alleged failure of the court to make specific findings of fact and conclusions of law on the questions and issues raised by the pleadings. It would seem that the facts are sufficiently stated in the opinion· but in order to comply with this request of proponent we make the following

### Findings of Fact

1. Charles R. Swanson, decedent, was a resident of Fox Township, Elk County, Pa. He died on July 12, 1948, leaving a will which was not dated but was signed by decedent and witnessed by Eugene B. Flynn and V. J. Koch.

2. The will was prepared in typewriting by Mr. Flynn, who delivered it to testator before it was signed. Later, testator brought the will to the office or residence of Mr. Flynn where testator signed the will and Mr. Flynn signed as a witness. Testator then took the will, signed by himself and Mr. Flynn, to V. J. Koch, who was requested by testator to sign it as a witness. Mr. Koch read the will and then signed it in the presence of testator as a witness.

3. The second paragraph of the will reads as follows:

"Second: I give, devise, and bequeath unto my beloved brother, Axel Swanson, his heirs and assigns forever, all my property, real, personal and mixed, of what nature or kind soever and wherever the same be or may be found at the time of my death."

4. The third paragraph of the will directs that Axel Swanson be released and discharged from any indebted-

ness owing by him to testator at the time of testator's death.

5. The fourth paragraph of the will appoints an executor as follows:

"Fourth: I hereby name, constitute and appoint Axel Swanson executor of this my Last Will and Testament and that no bond shall be required of him for his so acting or serving as my Executor."

6. Decedent had custody of his will from the time of its execution until his death on July 12, 1948.

7. Axel Swanson, sole legatee and devisee, died in April 1948, prior to the death of testator.

8. George A. Swanson is the son of Axel Swanson. For upward of four years he had been employed by testator in driving motor buses. Prior thereto for about two years he was employed by testator on part time in that type of work. Testator lived with the mother of George A. Swanson and was living in the mother's home at the date of his death.

9. During his last illness, testator was removed to a hospital where he died. Shortly before his death, testator told his nephew, George A. Swanson, about a steel box which was then in the bedroom occupied by testator. This steel box was in possession of testator and after his death, George A. Swanson found the box in his bedroom in which there was the will in question, together with other valuable papers, including deeds to real estate, etc.

10. When the will was examined and offered for probate, it was found that there were erasures and substitutions in the second and fourth paragraphs. At the end of the first line in the second paragraph the word, "brother", was apparently attempted to be erased by the use of a common eraser. The first three letters in this word, while legible, are covered with what appears to be a smudge. The last four letters are not as noticeably clouded. Above the word "brother" the word

"nephew" is written in ink in decedent's handwriting. The first word of the second line, which was apparently the word "Axel", is completely erased with the exception of the letter "l", which is distinguishable. The erasure was not made in ink but from its appearance was made by a common eraser or other instrument such as a knife, used with such force as to break or tear the paper upon which the will was written. Immediately above this word is written in ink, in decedent's handwriting, the word "George", so that the clause as altered reads: "I give, devise and bequeath unto my beloved nephew George Swanson" the whole estate of decedent.

11. In the fourth paragraph, the word "Axel" is obliterated in ink and the word "George" is written in decedent's handwriting immediately above the word "Axel", so that, the clause as altered reads, "I hereby name, constitute and appoint George Swanson Executor, etc."

12. The substitution of the words "nephew George" in the second paragraph and the word "George" in the fourth paragraph are in the handwriting of decedent and notwithstanding the presumption that the erasures and substitutions were the act of testator because he had custody of the will, proponent produced affirmative proof that the substitutions were in his handwriting.

13. There were no alterations, erasures or substitutions in the will when it was signed by Mr. Flynn and Mr. Koch as witnesses and each of these witnesses testified that the erasures and substitutions were made after they had signed the will as witnesses.

14. The will, with the erasures and substitutions, was admitted to probate as the last will and testament of testator and letters testamentary thereon were issued by the register of wills to George A. Swanson. An appeal from the probate of this paper was taken by Anna Swanson Francis, a sister of decedent, alleging that by

reason of the erasures and substitutions, the will with the erasures and substitutions is void because decedent did not republish the will after making the erasures and substitutions.

15. There was no republication of the will after the erasures and substitutions were made, nor was the will with the erasures and substitutions proved by the oaths or affirmations of two competent witnesses.

## Discussion

There is no question but that a testator may cancel or revoke his will in whole or in part by erasing or striking out any part or the whole thereof: Heller Estate, 158 Pa. Superior Ct. 194; Sando Will, 362 Pa. 1. It is likewise true that where a bequest is canceled, if a testator obliterates or draws a line through the name of a legatee, or an indicated bequest, the court will, if possible, give effect to the remaining words or paragraphs in the will, because the undestroyed part of the will *complete in itself* is probatable as the will of testator: Sheaffer's Estate, 240 Pa. 83.

The Wills Act of April 24, 1947, P. L. 89, sec. 4, 20 PS §180.4, provides: "No will shall be valid unless proved by the oaths or affirmations of two competent witnesses."

By section 5 of the same act, 20 PS §180.5 it is provided that:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than: . . . (1) by some other will or codicil in writing, . . . (2) by some other writing declaring the same, executed and proved in the manner required by wills, or . . . (3) by being burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testa-

tor must be proved by the oaths or affirmations of two competent witnesses."

We are concerned not only with cancellations but with substitutions and the legal effect of the substitutions. The question here is limited to one of probate, that is, whether or not the substitutions may be probated as effective parts of the last will and testament of testator. The subscribing witnesses testified there were no erasures or substitutions in the will when they signed as witnesses, and they know nothing about the erasures or the substitutions. The effect of the erasures and substitutions made by testator is to create a new will. He changed his will by naming a new devisee and a new executor. Therefore, there is an altered devise by the substitution of another person to take the place of the one originally named and there can be no doubt that such substitution, that is, a different devisee as compared with the original one, can be probated as an integral, legal part of the will only upon adequate proof that such substitution was made "by some other will or codicil in writing, [or] by some other writing declaring the same, *executed and proved in the manner required of wills*," as set forth in sections 4 and 5 of the Wills Act. Since there was no proof by two competent witnesses of the will as offered, or of the substitutions made therein, it follows that the will with the erasures and substitutions cannot be probated as the will of Charles R. Swanson.

The remaining question is: Should the original will without the cancellations and substitutions be admitted to probate as the last will and testament of testator? Proponent insists that this should be done, relying upon Simrell's Estate, 154 Pa. 604, upon the theory that since the original will, without the erasures and substitutions, was proved by the oaths of two subscribing witnesses it is the last will and testament of testator and as such must be admitted to probate.

Simrell's Estate is not controlling in this appeal. As we understand that case, it does not deal with the question here involved, viz., whether a duly executed and valid will can be revoked in whole or in part by acts subsequently done upon it by *testator himself.* From an examination of the record in that case contained in the paper books filed with the Supreme Court it appears: (1) That the original will in its unaltered state was offered for probate; (2) that the subscribing witnesses made the customary affidavit but included therein a statement that at the time of their signing as witnesses there were no erasures in the will; (3) that both of the sons, Charles and Byron, whose names are erased, were living at the time the erasures were made and when the mother died; (4) that the erasures were made by a daughter, Mrs. MacDonald, who proposed the erasures because she testified that her mother would have felt better if she had not mentioned either of the sons' names in the will, that her mother made a statement to her to this effect, and after the erasures were made, the will was placed among her papers where it remained until after her death and that the erasures were made three or four days prior to the death of Mrs. Simrell. Upon appeal from the probate, the lower court held that if it had been shown that Mrs. Simrell with her own hand had erased those parts of her will which appeared crossed out by an ink line drawn through them, or if the circumstances pointed to that, such alterations would amount to a revocation pro tanto, but that if the erasures were made by the daughter at the instance of testatrix and by her direction, as the daughter testified, it was the same as though made by testatrix herself. The appeal was sustained by the lower court, which directed that the will should be modified by striking therefrom the lines crossed out in ink and as so modified should be probated as the will of Mrs. Simrell.

The Supreme Court in reversing stated that the positive and uncontradicted testimony was that the erasures were made after execution and *not by testatrix herself*, and since there was but one witness who testified to the fact of the erasures being made by the authority of testatrix, the statutory proof was lacking and the will with the erasures could not stand as the will of testatrix. Therefore, the will in its original state without the erasures, having been proved by the oaths of two witnesses, was directed to be admitted to probate in the unaltered condition.

The facts are entirely different from the facts herein. Testator's brother Axel, had died several months before the death of testator, and testator apparently thought because his brother had died, the devise to him had been voided and that he could substitute the nephew, George, by cancelling the devise to Axel and his appointment as executor and substituting *in his own handwriting* the name of his nephew. Whether testator intended to revoke the devise to his brother can be determined by an inspection of what testator did to the paper upon which the will was written, or through such inspection aided by extrinsic evidence. There can be no doubt that testator actually intended to revoke and cancel all references in the will to his brother, Axel. The paper itself is evidence of that fact. In one place, the word "Axel" was completely erased with the exception of the letter "l", which is distinguishable. This erasure was not made in ink, but, from its appearance, was made by a common eraser or instrument such as a knife, used with such force as to break or tear the paper upon which the will was written.

Here testator had custody of his will from its execution until his death on July 12, 1948. The substituted words in the second and fourth paragraphs are in his handwriting. Because testator had possession of the

will, the presumption is that the erasures and substitutions were his act. However, proponent produced affirmative proof that the substitutions were in testator's handwriting. No such question was raised in Simrell's Estate. There is no authority vested in the court to rewrite this will or to reinstate in the will itself the name of the original devisee and executor in view of the fact that all of the evidence shown by the paper itself, and by the fact that the brother had died, is conclusive that testator intended to and did revoke his will insofar as it applied to his brother. When the mutilation and defacement of a will amounts to a cancellation or obliteration, the presumption is that testator acted animo revocandi: Heller Estate, 158 Pa. Superior Ct. 194, and cases there cited. Having revoked his will no life can be breathed into a dead instrument by the court.

Undoubtedly it was the intent of testator to substitute his nephew, George, for his deceased brother, Axel, but "While decedent's mistake is regrettable, it cannot be judicially corrected; the situation thus created must be accepted as it exists: . . . The question is not what a testator mistakenly thinks he is doing, but what he actually does": Bryen's Estate, 328 Pa. 122.

### Conclusions of Law

1. No power is vested in the court to rewrite or reinsert the name of the original devisee and executor in the will of Charles R. Swanson, deceased.

2. The cancellations and obliterations in the will of Charles R. Swanson, deceased, having been made by testator himself animo revocandi, his will is revoked and cannot be admitted to probate in its original condition.

3. The will as altered cannot be probated because, in its altered condition, it has not been proved by the oaths or affirmations of two competent witnesses, or otherwise as provided by law.

4. Since the will either in its original or altered state cannot be probated it follows that an intestacy results.

5. The appeal from the probate of the instrument in question with obliterations and substitutions as and for the last will and testament of Charles R. Swanson, deceased, must be sustained, the probate thereof and the grant of letters testamentary thereon set aside.

### Decree

Now, August 24, 1950, the second, third, fourth and fifth exceptions are sustained, all other exceptions are dismissed and the register of wills is hereby ordered to enter the decree nisi as the final decree herein.