## Crist Estate

*Paul Lane Ives*, for accountant.

*Ralph L. Lindenmuth* and *Philip B. Driver, Jr.*, for claimant.

*Butler, Beatty, Greer & Johnson*, for beneficiaries.

*Charles F. Mayer*, guardian and trustee ad litem.

VAN RODEN, P. J., May 27, 1957.—Decedent died August 26, 1956, survived by neither spouse nor issue.

By his last will and testament in writing, decedent bequeathed certain specific pecuniary legacies and devised and bequeathed the residue of his estate in trust for the benefit of his niece, Helen Phillips, for life, and then for the benefit of her children, all as more fully set forth in said will.

The first and final account of the executor of decedent's estate is presently before the court for audit, and in connection therewith, the court has been requested to determine the legal effect of certain pencilled lines, marks and interlineations.

The will was typewritten on six pages, signed by testator in ink at the end thereof on June 7, 1955, and was witnessed in ink by two subscribing witnesses. There are no other ink marks on the will.

The will as probated shows that a pencil line had been drawn through the following words in item first:

"and my burial shall be in my family lot in Gordner's Cemetery,"

In item second, wherein decedent bequeathed a legacy of $4,000 unto his brother, Frank G. Crist, the figure "$1,000" was written in pencil above the typewritten figure "$4,000.00."

In items third and fourth, wherein decedent bequeathed legacies of $5,000 each unto Lois Gordner and Lucille Gordner, a check mark was made in pencil in the middle of each of said items.

In item sixth, subparagraph A3, wherein decedent conferred upon the trustee the power to expend funds for the life beneficiary's funeral and gravestone, there appears an "X" mark in pencil.

The question to be decided by the court is whether these pencil marks amount to cancellation or obliteration within the meaning of the law.

Section 5 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.5, provides as follows:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:

"(1) Will or codicil. By some other will or codicil in writing,

"(2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, or

"(3) Act to the document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses."

It is obvious that decedent's will was neither "burnt", "obliterated" nor "destroyed". Was it, however, "canceled" by the aforementioned pencilled marks?

The will of decedent was found in his home after his death. It must be presumed that the pencil marks on the will were the act of decedent: Heller Estate, 158 Pa. Superior Ct. 194 (1945). Cancellation or obliteration does not mean an effacing so that the letters or words cannot be read. Words crossed out by lead pencil are sufficiently cancelled or obliterated: Heller Estate, supra.

In item first of the will, where testator drew lines through certain words relating to his burial provisions, there is a classic example of a cancellation, and the executor had no responsibility with respect to such cancelled provision.

In the other extreme, the check marks in item third and fourth are obviously ineffective as it is not possible to infer that testator acted animo revocandi. Check marks normally indicate approval or affirma-

tion rather than disapproval or cancellation. In any event there are no lines drawn through the dispositive provisions of items third and fourth. Accordingly such dispositive provisions remain effective. See Lewis v. Lewis, 2 W. & S. 455 (1841).

With respect to item sixth subparagraph A3, which consisted of five typewritten lines, with a pencilled "X" superimposed in the center of the writing and extending over two of the five typewritten lines, it would seem that testator intended thereby to eliminate this subparagraph from his will. Cancellation may be effected by drawing crossed lines on the paper as well as by drawing horizontal lines through certain provisions, provided it is done animo cancellandi. See Evans' Appeal, 58 Pa. 238, 244 (1868). However, inasmuch as this subparagraph of the will cannot become effective until the death of the life beneficiary, construction at the present time is premature and must abide the event.

The most difficult aspect of the problem presently before the court relates to item second of the will, wherein the figure "$1,000" appears as a pencil interlineation above the figure "$4,000.00".

If decedent intended thereby to create a legacy of $1,000, the new legacy was ineffective because the will was not reëxecuted: Wright Estate, 380 Pa. 106 (1955). There being no physical lines drawn through the typewritten "$4,000.00" or any other physical mark which could be deemed a cancellation or obliteration of the said "$4,000.00", that provision remains effective. See Rife Estate, 88 D. & C. 360 (1954).

. We hold therefore, that item second of the will confers a valid legacy of $4,000 upon decedent's brother, Frank G. Crist, that item third confers a valid legacy of $5,000 upon Lois Gordner and that item fifth confers a valid legacy of $5,000 upon Lucille Gordner, there being no valid cancellation, obliteration or revo-

cation thereof by testator during his lifetime. Accordingly, the said legacies will be included in the award to be made by the court.