## Kirk Estate

*John T. Curtin,* for petitioner.

*Henry C. Beerits* and *W. Wesley Nagle,* for respondent.

SAYLOR, J., April 7, 1967.—This is an appeal from probate of a single page holographic will executed on April 27, 1955, and subsequently obliterated in part by

testator. The register of wills granted letters testamentary to the trust company named in the will (now Provident National Bank) and prepared a "copy fair" which eliminated the dispositive provisions of the will.

The parties are Mabel E. Tremblay, originally named in the will as sole legatee of decedant's entire estate, and Edith Kirk Knerr, a first cousin, once removed, of decedent and his sole heir under the intestate laws.

There is agreement on the facts, as set forth in the petition and answer and in a stipulation of facts filed by counsel.

Decedent died on September 22, 1965, a resident of Philadelphia. In a drawer of his desk was found an envelope marked "Will of Chester A. Kirk". The envelope contained the original will and a piece of paper hereinafter referred to as the codicil.

Both the will and the accompanying paper were offered for probate. The will alone was probated. The "copy fair" shows the elimination of the dispositive paragraph. It includes the paragraph wherein the executor was named and these words written by testator after his signature: "See list herewith replaces above".

The so-called codicil listed the names of a woman and two men with the figure 1,000 appearing alongside each name. The name Mabel Tremblay is in the list with the figure 500 after it. Also on the paper are the following: "Bal. in trust", and "Prov. Trust to administer" and "4/28/64". There is no signature. The register refused to probate the so-called codicil. The appeal is from his action in probating the will without the dispositive provision.

The paragraph of the will bequeathing the entire estate to Mabel E. Tremblay was written in eight lines. Across these eight lines, two lines were drawn diagonally from the corners of the paragraph at the

top to the opposite corners at the bottom. Over the last line containing the legatee's address was drawn another line. In the center of the paragraph, on top of one of the cross lines, the word "void" was written.

Petitioner's position is that testator did not have the intent to revoke the bequest made to her when he performed the acts above related, and that, therefore, there was no revocation of such bequest, as required by the Wills Act of April 24, 1947, P. L. 89. She does not appeal from the action of the register of wills in not probating the so-called codicil. She does argue that the burden of proving an intent to cancel or revoke the legacy lies with respondent.

Respondent contends that what decedent did was to cancel the bequest to petitioner with the intent to revoke it within the meaning of section 5(3) of the Wills Act of 1947, 20 PS §180.5, which provides:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than: . . .

"(3) Act to the Document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction".

Since the will was found in decedent's desk in his home, the presumption arises that the act of cancellation was performed by him. Furthermore, it is logical to presume that he cancelled the affected paragraph with the intent to revoke the bequest it contained. Decedent's retention of possession and control of the documents until his death gives rise to the presumption that the act of cancellation was performed by him: Okowitz Will, 403 Pa. 82 (1961); Hildebrand Will, 365 Pa. 551 (1950); Heller Estate, 158 Pa. Superior Ct. 194 (1945). Such possession and control by decedent gives rise to a further presumption that the cancellation was done with the specific intent to re-

voke the will: Heller Estate, supra; Tomlinson's Estate, 133 Pa. 245 (1890).

However, petitioner relies upon the doctrine of dependent relative revocation in contending that the intent to revoke the bequest did not exist and that the original bequest is effective. She cites Braun Estate, 358 Pa. 271 (1948), where the Supreme Court affirmed the decision of this court which applies the doctrine. In that case, the will provided for a $50,000 bequest in trust for the benefit of testator's adopted daughter. The codicil provided:

"First. I hereby revoke the Trust Fund in favor of my Daughter Mildred, and substitute a lump sum of ———— dollars in cash".

The Supreme Court observed that the doctrine "is a rule of testamentary construction whose use, . . . is limited to aiding in the ascertainment of a testator's true intent", and it enforced the trust as originally created in the will.

The Supreme Court said, at page 275, quoting 1 Jarman, Wills 135 (1930):

"Where the act of destruction is connected with the making of another will, so as fairly to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted, such will be the legal effect of the transaction; and therefore, if the will intended to be substituted is inoperative from defect of attestation, or any other cause, the revocation fails also, and the original will remains in force".

In the case at bar, there is but one will. There is far more than the failure of testator to write in an amount in dollars in making a revocation. There is the obliteration of a paragraph giving the entire estate to a legatee and, in addition, an attempted codicil that at most gave to such legatee a much smaller bequest and to three other individuals six times the

amount of the reduced bequest which testator indicated the original legatee was to receive. The new bequest of $500 was scarcely one-ninety-fifth of the amount of his net estate, so that the attempted bequest was drastically reduced. And at the same time, decedent indicated in the so-called codicil that three new heirs were to participate and that there would be a residuary estate. The situation here is far different from that in Braun Estate, supra, where the doctrine was invoked.

In McClure's Estate, 309 Pa. 370 (1933), the Supreme Court said, page 373:

"The doctrine of dependent relative revocation, . . . has not as yet been accepted in its arbitrary form in this State. For its satisfactory solution there is nothing to lead the judicial mind with anything approaching logical certainty to the testatrix's real intent, when the provision of the second will fails either from internal or external causes. . . . Especially is this so where there is a residuary bequest disposing of the entire estate".

In Holt Estate, 405 Pa. 244 (1961), the Supreme Court said, page 250:

"The doctrine of dependent relative revocation is not favored in this Commonwealth and has rarely been applied. [Footnote omitted.] The reason is obvious—it usually furnished only speculation or a wild guess as to testator's intention to make his absolute revocation merely conditional".

The matter of invoking the doctrine is always dependent on the circumstances involved. The only purpose in doing so is to ascertain the intent of testator. Where the intention is clearly ascertained from the circumstances, the doctrine may be applied, as in Braun Estate, supra. And it was invoked in Rife Estate, 88 D. & C. 360, 4 Fiduc. Rep. 474 (Franklin Co., 1954), where in the will the words "One Hundred

($100.00)" were struck out and the words "500 each" were inserted in a paragraph wherein bequests were given to six individuals. The word "dollars" remained. This, said the court, showed that there was no intention to revoke the bequests.

In the matter before us, we do not have a new will or a codicil which materially changes a bequest in a prior will. There is no second instrument that is capable of being probated. We do have a will wherein a bequest is cancelled or obliterated by the act of testator. Decedent's words: "See list herewith replaces above", which he wrote after his signature on the will, do not in any way militate against the effect of his drawing of lines through the paragraph containing the bequest and his writing of the word "void" across the face of the paragraph.

In Heller Estate, 158 Pa. Superior Ct. 194 (1945), where the names of four residuary legatees were crossed out or obliterated, the court said, at pages 196-97:

"The court below considered the words 'know good write another' as indicative that the markings in the will were deliberative only. We do not believe this circumstance has such an implication. We think the words show a definite present intent rather than a contemplated future act to bring about a complete revocation. It is difficult for us to conceive of a more definite and conclusive cancellation of a clause or bequest in a will than appears in this will; and the written words are confirmatory of a revocatory intention, and indicate that a revival of the residuary clause or any part thereof would require another will or codicil".

The decree of the lower court was reversed.

In the present instance, the so-called codicil gives indication of what testator had in mind, had he written a codicil that could have been probated. That it

could not be probated does not detract from it as evidence of the fact that it confirms in part his action in cancelling the paragraph of the will.

In Tomlinson's Estate, supra, the will contained bequests cancelled by pencil lines drawn across and through them. The circumstances indicated that these marks were made by testator, and they raised no inference that he did not intend to do what he in fact did, namely, cancel the legacies crossed over. The fact that this decision was reached under the Wills Act of June 7, 1917, P. L. 403, does not mean that it is not apposite to the case at bar.

It is difficult to believe that testator did not intend to revoke the bequest to petitioner in view of what he actually did. In Holt Estate, supra, the court said, page 250:

". . . we cannot know or say with any accuracy or certainty—indeed it is the sheerest speculation—whether decedent would change his mind or carry out his intention to make a new will and if so what decedent would or might have provided in a new will. What we believe is clear and certain is that decedent did not wish or intend to dispose of his estate under his will of 1944 which he specifically said he *rendered void*". (Italics in original).

Here, testator not only lined out the bequest and marked it "void"; he also prepared the so-called codicil in which he indicated a disposition of his estate entirely different from that provided by the will. The fact that this paper could not be, and was not, probated, does not detract from its validity as evidence of what testator's intent really was. In Hildebrand Will, supra, the Supreme Court said, page 553:

"Testatrix, in her admitted handwriting at the bottom of the will following its execution, declared that she had *'marked off one name in Seventh (7)'*. True she did not *sign* the writing. But this was unnec-

essary since presumptively the obliteration was accomplished by her. Unexecuted writings may not revoke a will. . . . Parol declarations are also insufficient to revoke. . . . The present revocation, however, was not by either of these methods. It was by *obliteration.* Declarations by testators *in these instances*, are admissible to prove intent to obliterate. . . ." (Italics in original.)

In McClure's Estate, supra, the Supreme Court, in refusing to invoke the doctrine of dependent relative revocation, where a later will effectively revoked an earlier one, said, at pages 373-74:

"There is a further objection to the doctrine of dependent relative revocation as applied to this case. It would mean this court felt that testatrix intended the prior will to remain effective if the second failed. It is obvious testatrix never contemplated such a contingency, and we are asked to infer an intent never possessed by the decedent. While intention is paramount in the construction of testamentary documents, it by no means follows that the courts should create an intention, then ascribe it to a decedent, relative to a disposition of property which he never considered".

And again, pages 375-76:

"Testatrix, in her second will, after providing for funeral expenses and the care of her lot, directs all her property to be reduced to cash, and gives it all to the Home for Protestant Children. That is what she intended to do, and by so doing she completely annulled her pre-existing intention to give six bonds to the League of Women Voters. She disposes of 'everything else belonging to her'. There could be no clearer expression of intent than this provision. The mere fact that the will did not carry with it a sufficient execution to make the gift complete does not destroy the thought in the testatrix's mind when she wrote that paragraph, nor can we say that her intention was not complete because the will lacked two signatures".

So here. Testator's action in lining out the dispositive paragraph of his will and marking it "void", his phrase, "See list herewith replaces above", and his so-called codicil making a radically different disposition of his estate than his will originally called for, all evidence his intent that Mabel E. Tremblay should not inherit his estate. Testator revoked the provision for such inheritance by cancellation or obliteration thereof. The doctrine of dependent relative revocation can not be invoked to restore to life the provision of the will which testator unmistakably and effectively revoked.

As was said in Heller Estate, supra, page 197:

" 'How can we say it was not the intention of the (testatrix) to make these cancellations, when in reality (she) has made them': [citing] Tomlinson's Estate, supra. . . ."

The petition is dismissed, the action of the register of wills is affirmed, and the record is remanded to the register of wills.